*In re* MARRIAGE OF CAROLE N. HELLER, Petitioner-Appellee, and FLOYD N. HELLER, Respondent-Appellant.

First District (5th Division)   No. 85—3642

Opinion filed March 13, 1987.

---

Feiwell, Galper, Lasky & Berger, Ltd., of Chicago (Michael J. Berger, Lawrence S. Starkopf, and Joseph J. Sinopoli, of counsel), for appellant.

Schiller, Du Canto & Fleck, Limited, of Chicago (Arnold B. Stein and Sarane C. Siewerth, of counsel), for appellee Carole N. Heller.

Jerome Marvin Kaplan, of Chicago, for appellee William Richards.

JUSTICE MURRAY delivered the opinion of the court:

Respondent, Floyd N. Heller (Floyd), appeals from a judgment of the circuit court of Cook County dissolving his marriage to petitioner, Carole N. Heller (Carole), and an order awarding attorney fees entered pursuant to the judgment. Specifically, Floyd contends that the trial court abused its discretion with respect to the division of the marital property, the amount and duration of maintenance

awarded to Carole, and the amount of attorney fees awarded to his original trial counsel. For the reasons set forth below, we affirm in part, reverse in part, and remand the cause for further proceedings.

The parties were married on September 8, 1962. Two children were born as a result of the marriage, Tamara in 1963 and Laurie in 1965. In August 1982 the parties separated; Floyd vacated the marital home. On April 26, 1983, Carole filed a petition for dissolution of her marriage to Floyd. The petition was dismissed for want of prosecution on August 15, 1984, but refiled two days later. The matter was tried on December 4 and 5, 1984.

At the time of trial, Floyd was 51 years old. He was employed by University Anesthesiologists, Inc., and was an associate professor at Rush Presbyterian-St. Luke's Hospital. He received a gross salary of $135,800 and a bonus of $20,000 annually. Floyd was also a participant in an employee "Cafeteria Plan," which provided annual nontaxable benefits in the amount of $10,000 to defray the cost ·of his disability insurance premiums, health and life insurance premiums, parking dues, professional subscriptions, and, on the basis of the availability of remaining funds, reimbursement for medical services. His employer also contributed $50,000 annually to his pension and profit sharing plans. Floyd's monthly expenses were $5,945: $1,300 for rent, $270 for utilities, $600 for food, $350 for transportation, and $3,425 in maintenance to Carole. Floyd was also responsible for payment of $21,000 annually for the college tuition of Tamara ($7,000), who was a senior, and Laurie ($14,000), who was a sophomore.

Carole was 47 years old at the time of trial. She possessed a Bachelor of Arts degree in elementary education but had been out of that job market for 20 years. She also had taken a number of culinary courses. At the time of the dissolution proceedings, she was employed part time by a travel agency, having recently completed a training course, and received a gross salary of $105 per week. Carole estimated that her ultimate income from full-time employment as a travel agent would be $15,000 annually. Prior to her current employment, Carole testified that she received $9,800 annually from dividends on certain stocks ($5,000) and rental property owned by her ($4,800). Carole's monthly expenses amounted to $4,939 and included $700 for her psychologist, $103 for haircuts and manicures, $110 for telephone expenses, $200 for entertainment, and $266 for landscaping and snow removal on the real estate owned by her. Carole also testified that her yearly expenses were $6,000 for clothing, $2,400 for vacations, and $951 for expenses arising from main-

tenance of the rental property owned by her.

The parties stipulated that the total value of their marital property was $886,927 and the value of Carole's nonmarital property $109,136.

Following a bench trial, the court entered an order dissolving the parties' marriage. The court's order further provided, among other things: (1) that Floyd pay Carole $3,500 per month in permanent maintenance (based upon her expenses of $59,000 annually less her anticipated $15,000 salary), to terminate on her death; (2) that Floyd continue payment of $21,000 per year for the combined college expenses of the parties' daughters; (3) that Floyd pay all medical and dental expenses incurred by the parties' daughters and that he carry life insurance on his life in the amount of $50,000 with each daughter named as beneficiary until each daughter attains the age of majority or completes her college education, whichever shall last occur; and (4) that Floyd pay Carole's outstanding medical bills in the amount of $9,435, unless he agreed to file a joint income tax return for the year 1984 and paid all indebtedness resulting therefrom. (Floyd's appellate brief indicates he subsequently opted to pay the medical bills.) The court also awarded Carole all her nonmarital property, consisting of real estate located in Indiana ($55,000), a Central Life Assurance Company annuity ($32,187), a Kemper municipal bond fund ($5,232), a Drexel Lambert stock account ($10,189), and a Merrill Lynch stock account ($6,528).

The court further ordered that the marital property of the parties be divided as follows:

| Carole | |
|---|---|
| Marital home | $172,000.00* |
| Furniture and furnishings, etc. | 70,000.00 |
| Kemper annuity | 133,765.00 |
| Thunderbird municipal bond | 5,000.00 |
| One-half cash surrender value of three life insurance policies | 13,238.50 |
| One-half of Merrill Lynch stock account titled in Floyd Keller's name | 7,958.00 |
| Merrill Lynch account in Tamara Heller's name | 17,644.00 |
| TOTAL | $419,605.50 |

Floyd
Floyd N. Heller, Ltd.

| | |
|---|---|
| pension trust | $186,731.00 |
| University Anesthesiologists, Ltd. pension plan | $150,822.00 |
| University Anesthesiologists, Ltd. profit sharing plan | 37,000.00 |
| One-half cash surrender value of three life insurance policies | 13,238.50 |
| One-half of Merrill Lynch stock account titled in Floyd Heller's name | 7,958.00 |
| Note receivable from Laurie Heller | 50,000.00 |
| Meadowbrook tax shelter | 20,000.00 |
| Interest in Unique Miniatures partnership | 1,500.00 |
| TOTAL | $467,249.50 |

*The property was valued at $190,000, equity $172,000, and mortgage $18,000, which Carole was to assume as her sole responsibility.

After the filing of petitions for attorney fees, an agreed order was entered requiring Floyd to pay $6,500 to Carole's attorneys. However, Floyd contested the petition of his attorney, William Bruce Richards and, after obtaining new counsel, a hearing was held on the petition. On September 26, 1985, the court awarded $9,500 in fees to Richards. On October 24, Floyd filed a petition for reconsideration, requesting the court to reconsider its distribution of the marital property, the award of maintenance, and the award of attorney fees to Richards. The court denied the petition, and this appeal followed.

I

Floyd first argues that the trial court's distribution of the marital property was an abuse of discretion. Specifically, he contends that the value of his pension and profit sharing accounts were grossly overstated, having been based on their "present" rather than an actuarialized value. As a result, he contends that he "was left without liquid assets" with which to meet his expenses, including maintenance to Carole and the college tuition for the parties' daughters. He also alleges that he will be unable to maintain a lifestyle comparable to the

one established during the marriage.

■ Section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1985, ch. 40, par. 503(d)) requires that the trial court divide marital property in "just proportions." The court is to consider all relevant factors which, in this case, include: the duration of the marriage; the value of the property set apart to each spouse; the relevant economic circumstances of each spouse; the amounts and sources of each spouse's income; the age, occupation, vocational skills, employability, and needs of each party; whether the apportionment is in lieu of or in addition to maintenance; and the reasonable opportunity for each spouse for future acquisition of assets and income. (Ill. Rev. Stat. 1985, ch. 40, par. 503(d).) A reviewing court will not disturb the trial court's apportionment of property absent a showing of an abuse of discretion. (*In re Marriage of Wentink* (1984), 132 Ill. App. 3d 71, 476 N.E.2d 1109.) The standard used in determining whether the trial court abused its discretion is whether no reasonable person would take the view adopted by the court. *In re Marriage of Brooks* (1985), 138 Ill. App. 3d 252, 486 N.E.2d 267.

■ In the instant case, the trial court divided the marital property on an approximately 50/50 basis pursuant to its stipulated value: of the $886,927 total value, Floyd received $467,250, and Carole received $419,606. We find nothing in the record suggesting that this almost equal division of the property was an abuse of discretion, nor do we believe that a reasonable person would not take the view adopted by the court in distributing the property. The record discloses that Carole contributed over 22 years to the marriage as a homemaker, staying at home to raise the children of the parties rather than pursuing a full-time career as did Floyd. Floyd stipulated that he earned a gross salary of $135,800 plus a $20,000 bonus, and received $10,000 in nontaxable benefits from his employer for his professional and insurance expenses, as well as a nontaxable contribution in the amount of $50,000 annually towards his pension and profit sharing plans. Carole's anticipated annual income totals $24,800: $9,800 from dividends on certain stock and rental property owned by her (her nonmarital property) and an anticipated $15,000 from employment as a full-time travel agent. Floyd is a licensed physician, while Carole, although she has a teaching degree, has been out of the job market for at least 20 years.[1] Under the circumstances, it is clear that Floyd's opportunity for future acquisition of

---

[1]Floyd alleges Carole was employed during the marriage of the parties. He fails to cite to testimony in the record, however, and we have been unable to find proof to this effect.

income and assets is much greater than Carole's.

In addition, we note that Carole's needs are based on the established lifestyle of the parties, that they are no greater than they were prior to the dissolution of the parties' marriage, except for her psychologist's fee, and that Carole has insufficient income with which to support herself. On the other hand, as Floyd admits in his appellate brief, although maintenance to Carole and responsibility for payment of the parties' daughters' college tuition constitutes 50% of his net income,[2] he has 50% with which to support himself. We further observe that since Floyd has sufficient income to meet his needs while meeting Carole's, the award of maintenance to Carole has no effect on the amount of marital property apportioned to her. See *In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 412 N.E.2d 1336.

■ We also find Floyd's argument, that the apportionment of the property was inequitable because his pension and profit sharing plans were "overstated," is without merit. Notwithstanding the disputed issue of whether Floyd or his attorney failed to procure an actuarialization of his plans, Floyd *did* stipulate to the value of these plans *with full knowledge* of his option to have the plans actuarialized. A stipulation as to the value of marital property, in the absence of fraud or collusion, is binding on the parties so stipulating. (See *In re Marriage of Hilkovitch* (1984), 124 Ill. App. 3d 401, 464 N.E.2d 795.) Here, there is no indication in the record suggesting any fraud or collusion and, therefore, Floyd's stipulation as to the value of the marital property is binding on him.

■ Floyd's argument that he should be awarded "a greater share of the marital property or more of the liquid assets" because the illiquid property he "was left with" *might* have to be liquidated in order to meet his expenses, resulting in "devastating" tax liabilities, must also be rejected. Floyd states that he has "already had to borrow money in order to pay his contribution [of $6,500] towards Carole's attorneys' fees, and has no property with which to secure additional loans." He relies on *In re Marriage of Korper* (1985), 131 Ill. App. 3d 753, 475 N.E.2d 1333, where this court held it was error to award the wife an immediate offset of funds representing her one-half interest in the pension benefits receivable by the husband at some point in the future; such a distribution would completely relieve the wife of any attendant uncertainty in the collection of the benefits by the husband in

---

[2]The amount of $21,000 of this 50% calculation is a temporary expense; $14,000 annually for three years for Laurie, who was a sophomore at the time of trial, and $7,000 for one year for Tamara, who was a senior at the time.

the future in which he might receive all, part, or none of the benefits.

*Korper*, however, is readily distinguishable from the case before us. Here, Carole is not receiving an immediate offset of funds from Floyd's pension or profit sharing plans. In fact, the court did not apportion any benefits from those plans to Carole. Moreover, it appears that although Floyd contends he should receive a greater share of the marital estate or more of the liquid assets, he makes no suggestion that Carole receive any interest in his future benefits from the plans in lieu of such an additional apportionment.

Furthermore, we note that Floyd's suggestion that he may have to liquidate his pension and profit sharing plans to meet his expenses is purely speculative; there is no evidence in the record that any such action was made necessary by reason of the division of the marital property. (See *In re Marriage of Emken* (1981), 86 Ill. 2d 164, 427 N.E.2d 125.) We further observe that payment of a portion of Carole's attorney fees was agreed to by Floyd, and this expense cannot now be used to support his contention that the division of the property was inequitable. Similarly, Floyd's use of the maintenance award and his responsibility to pay the parties' daughters' college tuitions, as further examples to support this argument, is without merit in light of the fact that he had been paying these expenses for two years, with the exception of Carole's psychologist's fee, prior to the dissolution of the parties' marriage without having to liquidate his retirement plans. The fact that he now has additional expenses in maintaining a separate home for himself is a burden necessarily resulting from the dissolution of the parties' marriage and one which he can afford from the remaining 50% of his net income.

Finally, as Carole points out, of the $886,875 value of the marital estate, $680,000 represents the value of the marital residence and the various retirement plans. The remainder of the estate, slightly over $200,000, consists of furniture and furnishings, partnership interests, and small amounts of cash and liquid assets. Of these items, Carole was awarded a total of $75,000 in illiquid assets (household furnishings and an immature bond), a $17,644 Merrill Lynch account in Tamara Heller's name which was established to provide funds for her education, one-half of a Merrill Lynch stock account, and one-half of the total cash surrender value of three life insurance policies. Floyd, on the other hand, received a corresponding one-half of the stock account, one-half of the life insurance policies' total cash surrender value, a note receivable from Laurie Heller in the amount of $50,000, and two partnership interests totalling $21,500. Accordingly, the available liquid assets were divided as evenly as possible.

In light of the above, we hold that the trial court did not abuse its discretion in apportioning the marital property of the parties.

## II

Floyd next argues that the trial court abused its discretion in awarding Carole $3,500 per month in maintenance in light of its award to her "in excess of $500,000 in marital and nonmarital property, including income-producing real estate in Indiana, a $133,000 annuity, various securities, and the marital home valued at almost $200,000." Specifically, Floyd contends that the award of maintenance of $42,000 annually, in addition to the "huge" property settlement to Carole, is unprecedented. He also contends that the award of permanent maintenance was an abuse of discretion, arguing that Carole should only receive maintenance for the period of time necessary to become self-sufficient. Carole, on the other hand, argues that the amount and duration of the maintenance award was proper because she lacks sufficient property to provide for her reasonable needs and will be unable to support herself from her future employment in a manner sufficient to maintain the lifestyle established during the marriage.

■■ Section 504(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 504(a)) provides that a court may grant maintenance only if it finds that the spouse seeking maintenance: lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs; is unable to support herself through appropriate employment; or is otherwise without sufficient income. The Act further provides that the maintenance order is to be in such amounts and for such periods of time as the court deems just, after consideration of the following additional factors: the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment; the standard of living established during the marriage; the duration of the marriage; the age and the physical and emotional condition of both parties; and the ability of the spouse from whom maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance. (Ill. Rev. Stat. 1985, ch. 40, par. 504(b).) The standard for determining whether a trial court has abused its discretion in awarding maintenance is the same standard used in determining whether there was an abuse of discretion in apportioning marital property, *i.e.*, whether no reasonable person would take the view adopted by the court. See *In re Marriage of Brooks* (1985), 138 Ill. App. 3d 252, 486 N.E.2d 267.

■■ In the instant case, we first find that the trial court properly

awarded maintenance to Carole based on a consideration of the relevant factors enumerated in section 504 of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 504). Specifically, as the record discloses, the parties had been married for approximately 22 years. Carole was 47 years old and Floyd 51, and the parties were in good health. As previously mentioned above, Carole's financial resources consisted of an anticipated annual gross income of $24,800. Floyd's financial resources consisted of an annual gross salary of $135,800 and a $20,000 bonus, as well as employer paid expenses and perquisites totalling $60,000.

In addition, we further note that Floyd's personal monthly expenses amounted to $5,945 (of which $3,425 represented a maintenance payment to Carole) and $21,000 over the year for tuition for his daughters' college education. Carole's monthly expenses, which Floyd was unable to successfully contest, amounted to $4,939, which included $500 per month for clothing ($6,000 yearly) and $200 per month for vacations ($2,400 yearly).

Clearly, Carole did not have sufficient income with which to provide for her reasonable needs or to maintain the standard of living established during the marriage.[3] On the other hand, Floyd did have sufficient income from his salary alone to meet his own expenses while meeting Carole's; as previously discussed in point I of this opinion, the award of maintenance to Carole and Floyd's responsibility for the college tuition of the parties' daughters constituted only 50% of his net income. Also, as we further observed, Floyd had been able to pay these expenses, with the exception of Carole's monthly psychologist's fee, during the marriage and during the two years the parties were separated preceding the dissolution of their marriage. There is no indication in the record that payment of these expenses, derived from any source other than Floyd's salary.

Additionally, we find Floyd's contention that Carole can sell the house awarded to her and invest the proceeds to support herself is without merit. Carole is not obligated to sell her assets to generate

---

[3]Throughout Floyd's appellate and reply briefs he continuously alleges that Carole has "significant income" from the $500,000 marital and nonmarital property awarded to her. However, nowhere does he set forth any differing amounts than the $9,800 Carole receives from her nonmarital property, nor has our review of the record indicated any. We can only surmise that Floyd has failed to recognize that it is the income produced by the property, rather than its value, which must be considered in determining appropriate maintenance. (See *In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 412 N.E.2d 1336.) We further note that neither Carole nor Floyd indicate any dividends or income received by Carole from the marital property apportioned to her, and we therefore do not consider its existence one way or the other.

income to support herself where Floyd has sufficient income to meet his needs while meeting hers. See *In re Marriage of Weinberg* (1984), 125 Ill. App. 3d 904, 466 N.E.2d 925.

■ We agree with Floyd, however, that the trial court abused its discretion in awarding Carole permanent maintenance, but only to the extent that it failed to make provision for review of the award. In determining the appropriate duration of maintenance, one of the factors the court must consider is "the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment." (Ill. Rev. Stat. 1985, ch. 40, par. 504(b)(2).) A spouse applying for maintenance has an affirmative duty to seek gainful employment. (*In re Marriage of McNeeley* (1983), 117 Ill. App. 3d 320, 453 N.E.2d 748.) The objective of this rehabilitative maintenance "is to enable a formerly dependent spouse to become financially independent in the future." (*In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 352, 461 N.E.2d 447.) "Maintenance for a limited period is appropriate where the spouse is employable at an income not overly disproportionate from the standard of living established during the marriage. Conversely, where the spouse is not employable or is employable only at a lower income, as compared to her previous standard of living, then permanent maintenance would be appropriate." *In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 465, 426 N.E.2d 1087.

Here, notwithstanding the facts that at the time of trial Carole was a healthy 47-year-old woman, free of raising a family, with a college degree in teaching, training as a travel agent, and experience in culinary cooking, her part-time employment at $105 per week and/or her anticipated $15,000 annual income from full-time employment as a travel agent was clearly disproportionate to the standard of living established during the marriage. However, in light of the facts that Carole is well-educated and her earning capacity speculative, we believe it would have been more appropriate for the trial court to have reserved for review the maintenance award after a given period of time (see *In re Marriage of McNeeley* (1983), 117 Ill. App. 3d 320, 453 N.E.2d 748), such as every five years, in order to reassess Carole's ability to become financially independent.

Moreover, we note that should there be a substantial change in circumstances—such as a decrease in Carole's expenses or an increase in her earning capacity or a decrease in Floyd's resources (Ill. Rev. Stat. 1985, ch. 40, par. 510(a))—or if Carole were to remarry or to cohabit with another person on a resident, continuing conjugal basis (Ill. Rev. Stat. 1985, ch. 40, par. 510(b)), the maintenance award would be

reviewable in any event. On the other hand, if none of these events occur, Carole's maintenance will continue in the amount originally awarded by the court. See *In re Marriage of McNeeley* (1983), 117 Ill. App. 3d 320, 453 N.E.2d 748.

For the reasons stated above, we hold that the trial court abused its discretion in awarding Carole permanent maintenance without making provision for review of the award.

### III

Floyd's final argument is that the trial court abused its discretion in awarding $9,500 to his original attorney, William Bruce Richards. Richards' petition for attorney fees sought $125 per hour for office time and $150 per hour for court time. His total requested fee of $14,007 was based upon 80¼ hours of office time and 26½ hours of court time. At the time he filed his petition, he had received $3,500 from Floyd and was petitioning for $10,507 in additional fees.

On appeal, Floyd does not contest the hourly rates but argues that the application of those rates to the time spent by Richards on his case was an abuse of discretion by the trial court where Richards' in-court services concerned routine motions for continuances and agreed orders and the office time billed consisted of telephone conversations which should not have been billed at the same rate as regular office attorney-client work. He also contends that the trial court failed to consider the lack of any benefits resulting to him from Richards' representation; instead of any benefits, he alleges "he was left with no home, no liquid assets, and must pay $65,000 per year until his obligation to pay maintenance terminates on Carole's death."[4] In support of this argument, Floyd points to Richards' failure to take discovery, obtain appraisals or have his pension and profit sharing plans actuarialized, and Richards' unilateral stipulation as to the value of his Meadowbrook tax shelter which Floyd now contends is worthless.

Richards, who filed an appellate brief as an additional appellee, counters that the total hours spent on Floyd's case, covering a 2½ year period, were reasonable and necessary and his fees correspondingly appropriate. He alleges that extensive discovery was obtained from a two-hour deposition of Carole; that he in fact had the furniture in the marital home appraised; that he did not obtain an actuarialization of

---

[4] Apparently Floyd is referring to the annual award of maintenance in the amount of $42,000 and $21,000 for the college tuition of the parties' daughters, or a total of $63,000. As noted previously in this opinion, $21,000 of this amount is a temporary expense.

Floyd's retirement plans because Floyd did not want to spend the money necessary for an actuary's services; that although Floyd's case was submitted to the court through a series of stipulations, he spent two full days in court in obtaining the stipulations; that he spent the greater part of the entire day in court on December 4 and 5, 1984, in the trial of the case, and that he was required to and did submit a written memorandum of his closing argument; that his telephone conversations were necessary for a determination of the issues in the case; that Floyd never expressed any dissatisfaction with his representation until the court announced its judgment; and that Floyd has failed to demonstrate that the result in the case would have been different had he not stipulated as to the retirement plans' values or had he engaged in extensive counterdiscovery or that the alleged overvaluation of the Meadowbrook tax shelter resulted in any detriment to Floyd.

■■ ■ An award of attorney fees will not be reversed by a reviewing court absent a showing of an abuse of discretion. (*Donnelley v. Donnelley* (1980), 80 Ill. App. 3d 597, 400 N.E.2d 56.) The criteria for determining whether fees are reasonable include the skill and standing of the attorneys; the difficulty of the questions in issue; the amount and importance of the subject matter, especially from a family law standpoint; the degree of responsibility involved in the management of the case; the usual and customary charge in the community; and the benefits resulting to the client. (*In re Marriage of Armstrong* (1982), 107 Ill. App. 3d 217, 437 N.E.2d 761.) The fees allowed should be fair to both the party required to pay and to the attorney requesting them. (*In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 421 N.E.2d 1308.) Finally, the time charged for must have been necessary to handle the matter involved. *Christian v. Christian* (1979), 69 Ill. App. 3d 450, 387 N.E.2d 1254.

■■ Based on this criteria and an examination of the record, this court must reverse the trial court's award of $9,500 in attorney fees to Richards. Although the skill of Richards is unquestioned, we believe the trial court failed to consider the lack of benefits resulting to Floyd. The marital property was evenly divided based on erroneous, however binding, stipulated values. What the division might otherwise have been cannot be determined. Additionally, if in fact the Meadowbrook tax shelter was worthless at the time of trial, Floyd's share of the marital property would have been, at the least, increased by $20,000. Upon remand, therefore, we direct the trial court to consider the question of whether the amounts charged by Richards for routine motions, agreed orders, and office telephone calls were excessive in light of the results achieved.

For the foregoing reasons, the judgment of the trial court dissolving the parties' marriage is affirmed in part, reversed in part, and the cause remanded. The court's order awarding attorney fees to Floyd's original attorney is reversed and the cause remanded with directions.

Affirmed in part; reversed in part and remanded.

SULLIVAN, P.J., and LORENZ, J., concur.