*In re* MARRIAGE OF ANN EINHORN, Petitioner-Appellant, and JAY EINHORN, Respondent-Appellee.

First District (5th Division)   Nos. 87—0129, 87—0315 cons.

Opinion filed September 23, 1988.

Law Offices of Robert E. Zeitner, of Chicago, for appellant.

John D. Gorby, of Chicago, for appellee.

PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Both parties filed separate appeals, which were consolidated in this court, from a judgment of dissolution of their marriage.

Ann Einhorn contends the trial court abused its discretion by the following: (1) when it awarded her $70 per month as rehabilitative maintenance, (2) when it did not award her an apartment building

that was marital property, (3) when it allowed either party to contemplate making extraordinary repairs to the apartment building, (4) when it did not require Jay to repay a "marital debt," and (5) when it did not require Jay to pay Ann's attorney fees and costs.

Jay raises only one issue: whether the trial court had the authority to order Ann to sign a written declaration under section 152(e) of the Internal Revenue Code (I.R.C. §152(e) (1986)), stating she would not claim the dependency exemptions for their children.

We affirm in part, vacate in part, and remand.

The parties were married on September 13, 1968, and had three children: Catrin, Elias, and Aaron. The parties separated on April 22, 1982, and judgment for dissolution of marriage was entered on September 30, 1986.

Prior to trial, the parties entered into a joint custody agreement which gave Ann physical custody of the children for the majority of the time. The joint custody agreement was incorporated into the judgment for dissolution.

During the marriage, Jay earned a bachelor's degree in liberal arts, a master's degree in counsellor education, and a doctorate degree in psychology. At the time of trial, he was 37 years old and employed full time as an administrator for a nursing home. He also had part-time teaching positions in two different universities. He testified his gross income in 1985 was $26,400 from his full-time position and a total of $3,125 from his part-time positions. There was some evidence to indicate that Jay's gross income for 1986 may be approximately $35,000; however, this evidence was inconclusive.

Ann attended school in Wales, England, until she was 17 years old and does not have a high school diploma or its equivalent. At the time of trial, she was 40 years old, a housewife and otherwise unemployed. She contributed approximately 10 hours per week to her children's school on a volunteer basis. Ann testified that since she and Jay separated in April of 1982, she had not made any effort to find employment; however, she planned to do so once her youngest child was enrolled in school full time in September of 1987. Subsequent to trial, Ann unsuccessfully sought employment from some local restaurants. In April of 1988, at oral argument, Ann's attorney stated Ann has not found employment because of "time constraints."

While married, the parties purchased a three-flat apartment building. They lived in one of the apartments and rented the other two for $370 and $365 per month. At trial, the evidence established the building was valued between $94,000 and $115,000, and the unpaid mortgage balance was approximately $51,000. Ann testified the building

was in "mediocre" condition and Jay testified it needed $40,000 to $50,000 worth of repairs.

The building was purchased in 1979 with the financial assistance of both parties' fathers. Jay's father gave them $10,000 as a gift. Ann's father, who lived in Britain and is now deceased, gave them 5,000 pounds (at that time, approximately $10,000 in United States currency). At trial, when Ann was asked whether the money from her father was a loan or gift, she testified, "Debatable. He said to different people different things," and stated she believed she had a "moral obligation" to repay the money even though her father is deceased. Jay's mother, Jennie Einhorn, who now lives with Ann, testified that Ann and Jay were to make payments to Ann's father of $100 per month. Jay made six or seven payments which Jennie deposited in a bank account in Ann's father's name.

On the other hand, Jay testified the money from Ann's father was a gift even though he signed certain loan documents. The documents were not introduced at trial. He explained Ann's father put the money in the form of a loan only because at the time, Britain had a prohibition on sending money out of the country unless it was a loan. Jay further testified he made deposits into Ann's father's bank account, not as repayment for the loan, but for the express purpose of allowing Ann's father to have some money for his next visit to the United States.

Ann testified she had 5,000 pounds (which she stated was the equivalent of $6,000 in United States' currency) in a savings account which she received as the beneficiary of her father's travel insurance policy. Contrary to Ann's testimony, Ann's attorney has repeatedly asserted that Ann inherited the money from her father, and that the money is restricted for her and her children's use to visit her family every two years in Britain. There was no evidence introduced at trial to establish a legal restriction on the money.

The court awarded Ann sole and exclusive possession of the apartment building until the youngest child turns 13 years old or graduates from eighth grade, whichever occurs first. At that time, the building is to be sold at fair market value and the proceeds from the sale are to be divided equally between Ann and Jay. During her possession, Ann is entitled to collect the rents from the two apartments. She is responsible for all ordinary repairs and expenses, the mortgage, real estate taxes, and insurance.

The court ordered that each party is responsible for any debts owed to their respective parents that were incurred before the date of separation and "[s]pecifically [Ann] is to be responsible for repaying

whatever loans she deems to be outstanding to her father."

The court found Jay was financially able to pay child support and maintenance. Ann was awarded $611 per month for child support and $70 per month for rehabilitative maintenance. The court stated it was imperative for Ann to seek employment and for that reason, ordered the maintenance award reviewable when the youngest child begins school full time.

The court also granted Ann tax dependency exemptions for the three minor children, unless she waives the exemptions.

After judgment was entered, Ann petitioned the court to award her attorney fees and costs against Jay. After a hearing, the court denied the motion, finding that Jay did not have the financial ability to pay the fees and costs.

Jay filed a post-trial motion requesting the court delete the paragraph of the judgment that granted Ann the tax dependency exemptions. Jay also moved the court to order Ann to sign a declaration of waiver of the exemptions. The court denied the motions and entered an order that stated section 152(e) of the Internal Revenue Code deprived the court from granting exemptions to the noncustodial parent and deprived the court from ordering the custodial parent to sign a written declaration waiving the exemption.

After ruling on the post-trial motions, both parties filed timely notices of appeal. The appeals were consolidated in this court.

OPINION

I

Ann first argues that the court abused its discretion when it awarded her $70 per month for rehabilitative maintenance. She argues the court did not consider the factors in section 504(b) of the Illinois Marriage and Dissolution of Marriage Act in determining the amount of the maintenance award. (Ill. Rev. Stat. 1985, ch. 40, par. 504(b).) She contends her current expenses exceed her income and her education and job skills restrict her to a job paying minimum wage. Ann believes she is entitled to a higher award of maintenance.

■ The Marriage and Dissolution of Marriage Act allows the trial court to award maintenance in an amount it deems just after considering the relevant factors, including: the financial resources of the party seeking maintenance; the time required for that party to acquire sufficient education or training to find appropriate employment; the standard of living established during the marriage; the duration of the marriage; the age and the physical and emotional condition of

both parties; the ability of the other spouse to pay maintenance while meeting his needs; and the tax consequences of the property division. Ill. Rev. Stat. 1985, ch. 40, par. 504(b).

■ The standard for determining whether the trial court abused its discretion in awarding maintenance is whether no reasonable person would take the view of the trial court. (*In re Marriage of Heller* (1987), 153 Ill. App. 3d 224, 505 N.E.2d 1294.) On appeal, a maintenance award will not be set aside unless it is against the manifest weight of the evidence. *In re Marriage of Kristie* (1987), 156 Ill. App. 3d 821, 510 N.E.2d 14.

Ann receives $735 per month in rent for the two apartments in the building, $611 per month in child support, and $70 per month in maintenance. Ann testified the expenses for her and her children are $1,794.25 per month. Ann's monthly expenses exceed her income by approximately $378.

As for Jay's financial status, the court did not make a specific finding as to Jay's income; however, he testified his gross income for 1985 was $29,525. Jay testified his monthly expenses are approximately $120 more than his monthly net income.

Despite the fact that Ann's expenses exceed her income by a greater amount than Jay's expenses exceed his income, Ann has approximately $6,000 in a savings account and she has made practically no effort to find employment. Accordingly, Ann's belief she is entitled to additional maintenance and is entitled to reserve her savings is unrealistic.

■ The recipient of maintenance has an affirmative obligation to seek gainful employment. (*In re Marriage of Heller* (1987), 153 Ill. App. 3d 224, 505 N.E.2d 1294.) Ann has made practically no effort to seek employment in over six years. The evidence at trial established she has experience as a waitress. Ann's failure to seek employment does not lend credibility to her argument that she is entitled to additional maintenance.

■ We find no support in the record for Ann's contention that the trial court failed to consider the factors set forth in section 504(b) when it determined the amount of the maintenance award. Neither party's financial situation is healthy. After reviewing the factors in section 504(b) and the financial situation of both parties, we believe the trial court's award of $70 per month maintenance was not an abuse of discretion.

## II

Ann next disagrees with the court's decision to divide the pro-

ceeds from the sale of the building equally between the parties. The trial court awarded her exclusive possession of the building until the time it will be sold; however, Ann contends she should have been awarded ownership of the building because Jay earned three degrees during their marriage and his current financial situation is superior to hers.

█ The trial court's division of marital property will not be disturbed on appeal absent a showing of abuse of discretion. (*In re Marriage of Heller* (1987), 153 Ill. App. 3d 224, 505 N.E.2d 1294.) A trial court abuses its discretion when no reasonable person would take the view adopted by the trial court. (*In re Marriage of Brooks* (1985), 138 Ill. App. 3d 252, 486 N.E.2d 267.) Abuse of discretion will be found in property division when the trial court acts arbitrarily without conscientious judgment or when it exceeds the bound of reason and ignores recognized principles of law so that substantial injustice results. *In re Marriage of Partyka* (1987), 158 Ill. App. 3d 545, 511 N.E.2d 676.

Ann cites *In re Marriage of Weinstein* (1984), 128 Ill. App. 3d 234, 470 N.E.2d 551, for the proposition that "the contributing spouse should be entitled to some form of compensation for the financial efforts and support provided to the student spouse." She contends that when the property division was made, the trial court did not take the fact that Jay earned his degree during the marriage into consideration.

Jay earned a bachelor's, master's, and doctorate degree during the marriage. Jay testified his father paid all of the tuition for his undergraduate education, most of the tuition for his master's degree, and part of the tuition for his doctorate degree. Jay paid the remaining portion of the tuition and obtained a student loan. Jay also testified that when he was in school he was employed either full time or part time, depending on his school schedule. Although Jay testified Ann contributed "zero" to his education, Ann contributed to the raising of the children and sometimes worked as a waitress during this time. She had several different part-time waitress positions during the course of their marriage and worked periodically until after her second child was born. While there was no testimony as to how long she held these positions, Jay testified she did not work every year.

Jay testified he paid the rent during most of the time he was in school and other times his father and Ann paid the rent. Jay also testified his father "contributed very substantially" toward their expenses by giving them money and food from his restaurant.

█ After reviewing the record, we do not find any basis for Ann's contention that the trial court did not take into consideration

the fact that Jay earned his degrees during the marriage. Although Ann contends she should have been awarded the apartment building because of her contribution while Jay was in school, we believe the evidence establishes that Jay and his father also made significant contributions to Jay's education. After taking into consideration Ann's contribution while Jay earned his degrees and both parties' financial status, we do not believe the division of the apartment building is unreasonable. Accordingly, the court did not abuse its discretion when it divided the marital property.

## III

In a related argument, Ann contends the trial court abused its discretion when it allowed either party to contemplate making extraordinary repairs to the apartment building. The judgment for dissolution provided that if the parties agree an extraordinary repair is necessary to preserve the building, then the party who pays for the repair will receive a credit above his 50% share when the building is sold. If the parties cannot agree that the extraordinary repair is necessary, then the party contemplating the repair may apply to a court for a determination of whether the repair is necessary and receive a credit for paying the repair.

Ann argues that because she lives in the building, she must make the extraordinary repairs whether or not Jay agrees the repairs are necessary. Implicit in her argument is that Jay will not agree to any extraordinary repairs and, therefore, she will need to seek a court's determination that every extraordinary repair is necessary. She argues this provision is unreasonable because she cannot afford to incur additional attorney fees and costs. She concludes, "[n]o reasonable man would put the burden of extraordinary repairs to the house on the wife for eight years."

The trial court did not place the burden of the extraordinary repairs solely on Ann as she contends; she only speculates that Jay will not agree to the necessity of any extraordinary repairs. Both parties, however, have an interest in maintaining the safety and security of the building because their children live there and both parties have a financial interest in the building because they will divide the proceeds of the sale.

Because both parties have joint interests in the building, we believe the provision on extraordinary repairs is a fair compromise. We do not find support for Ann's argument that the trial court abused its discretion in ruling on extraordinary repairs.

## IV

Ann also argues the trial court abused its discretion when it ordered that "[Ann] is to be responsible for repaying whatever loans she deems to be outstanding to her father." She contends the $10,000 her father gave her and Jay is a marital debt.

The trial court must take into account the liabilities of the parties when it divides marital property. (Ill. Rev. Stat. 1985, ch. 40, par. 503(d).) The court's division of marital property will not be disturbed absent an abuse of discretion. *In re Marriage of Heller* (1987), 153 Ill. App. 3d 224, 505 N.E.2d 1294.

The testimony at trial was conflicting as to whether the money from Ann's father was a loan or a gift. Jay flatly contended the money was a gift while Ann stated the issue was "debatable." She felt a "moral obligation" to repay the money to her deceased father's estate. Ann did not establish any legal obligation to repay the money, and thus, when the trial court ordered her to repay "whatever loans she deems outstanding to her father" it did not abuse its discretion.

## V

Ann also appeals from the trial court's denial of her motion for attorney fees and costs. Ann incurred a total of $9,571.76 in attorney fees and costs and she paid $1,100 toward that amount. She contends the court erred when it found Jay was financially unable to pay her fees and costs.

As a general rule, attorney fees are the primary responsibility of the party for whom the services were rendered. (*In re Marriage of Meyer* (1986), 140 Ill. App. 3d 1031, 489 N.E.2d 906.) The court, however, has the power to order one spouse to pay the other spouse's attorney fees and costs after considering the financial resources of both parties. (Ill. Rev. Stat. 1985, ch. 40, par. 508.) A spouse who is seeking an award of attorney fees and costs must show financial inability to pay the fees as well as the financial ability of the other spouse to pay them. (*In re Marriage of Erickson* (1985), 136 Ill. App. 3d 907, 483 N.E.2d 692.) The decision regarding attorney fees is within the sound discretion of the trial court and will not be reversed absent abuse of discretion. *In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 483 N.E.2d 1229.

In the present case, the trial court found that neither party was in a financial position to pay his own attorney fees and that Jay did not have the financial ability to pay Ann's fees and costs. The record establishes that Jay's monthly expenses exceed his income by ap-

proximately $120. Accordingly, Ann has not established that the trial court's denial of her motion for attorney fees and costs was an abuse of discretion.

## VI

The last issue is one of first impression for this court: whether a trial court can order a custodial parent to sign a written declaration that he will not claim dependency exemptions under section 152(e)(2) of the Internal Revenue Code (I.R.C. §152(e)(2) (1986)), effectively allocating the exemptions to the noncustodial parent.

The trial court awarded Ann tax dependency exemptions for the parties' three minor children. Jay filed post-trial motions requesting the court to delete the paragraph of the order granting the exemptions to Ann and requesting the court to order Ann to sign a declaration of waiver of the exemptions, which were denied by the trial court. The court found that under section 152(e) of the Internal Revenue Code, it did not have the power to award the exemptions to the noncustodial parent or the power to order the custodial parent to sign a written declaration that he would not claim the exemption.

At issue is our interpretation of the recent amendment to section 152(e) of the Internal Revenue Code which changed the standards for a noncustodial parent to claim dependency exemptions. A dependent is a son or daughter of the taxpayer who received over half of his or her support for the year from the taxpayer. (I.R.C. §152(a)(1) (1986).) The amended statute is applicable to tax years after December 31, 1984, and now provides, in pertinent part:

"(1) Custodial parent gets exemption.—Except as otherwise provided in this subsection, if—

(A) a child *** receives over half of his support during the calendar year from his parents—

(i) who are divorced or legally separated under a decree of divorce or separate maintenance, [and]
* * *

(B) such child is in the custody of one or both of his parents for more than one-half of the calendar year,

such child shall be treated, for purposes of subsection (a), as receiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year (hereinafter in this subsection referred to as the 'custodial parent')." I.R.C. §152(e)(1) (1986).

There are three exceptions to the general rule granting the exemptions to the custodial parent, two of which are inapplicable here:

cases involving multiple support agreements (I.R.C. §152(e)(3) (1986)), and those involving "qualified pre-1985 instruments" (I.R.C. §152(e)(4) (1986)). The remaining exception, at issue here, allows the noncustodial parent to claim the exception if:

"(A) the custodial parent signs a written declaration (in such manner and form as the Secretary may by regulations prescribe) that such custodial parent will not claim such child as a dependent for any taxable year beginning in such calendar year, and

(B) the noncustodial parent attaches such written declaration to the noncustodial parent's return for the taxable year beginning during such calendar year." (I.R.C. §152 (e)(2) (1986).)

The exemption may be released for a single year, a number of specified years, or for all future years, as specified in the declaration. Temp. Treas. Reg. §152—4T (1984).

The former section 152(e) provided that a dependant would be treated as receiving over half his support from the custodial parent (I.R.C. §152(e)(1) (1985)), unless either (1) the noncustodial parent was given the exemption in a decree or written agreement between the parties and he could prove he provided at least $600 in support during the year (I.R.C. §152(e)(2)(A) (1985)), or (2) the noncustodial parent provided $1,200 in support during the year and the custodial parent did not provide more than that amount (I.R.C. §152(e)(2)(B) (1985)).

State courts interpreted the former section 152(e) as allowing them to allocate dependency exemptions to the noncustodial parent. *E.g., Westerhof v. Westerhof* (1984), 137 Mich. App. 97, 357 N.W.2d 820; *Morphew v. Morphew* (Ind. App. 1981), 419 N.E.2d 770; *Niederkorn v. Niederkorn* (Mo. App. 1981), 616 S.W.2d 529; *MacDonald v. MacDonald* (1982), 122 N.H. 339, 443 A.2d 1017.

Because the amendment provides an automatic allocation of exemptions to the noncustodial parent, some courts of review have held that the amendment divested State trial courts of jurisdiction to allocate exemptions. (*Lorenz v. Lorenz* (1988), 166 Mich. App. 58, 419 N.W.2d 770; *Hughes v. Hughes* (1988), 35 Ohio St. 3d 165, 518 N.E.2d 1213 (Wright, J., dissenting, joined by Moyer, C.J., and Douglas, J.); *Stickradt v. Stickradt* (1986), 156 Mich. App. 141, 401 N.W.2d 256.) Other courts have stated that a State trial court cannot award the exemption to the noncustodial parent unless the custodial parent signs a declaration he will not claim the exemption (*Theroux v. Boehmler* (Minn. App. 1987), 410 N.W.2d 354; *Davis v. Fair* (Tex. Ct. App. 1986), 707 S.W.2d 711), or that the trial court cannot order the custodial parent to sign the declaration (*Hughes v. Hughes* (1988), 35 Ohio

St. 3d 165, 518 N.E.2d 1213; *Jensen v. Jensen* (Nev. 1988), 753 P.2d 342).

Another line of cases, however, has interpreted the amendment to allow a State trial court to allocate the exemptions to the noncustodial parent and order the custodial parent to sign a written declaration he will not claim the exemption. (*Hooper v. Hooper* (Tenn. Ct. App. Feb. 9, 1988), No. 1130; *Pergolski v. Pergolski* (1988), 143 Wis. 2d 166, 420 N.W.2d 414; *Cross v. Cross* (W. Va. 1987), 363 S.E.2d 449; *Lincoln v. Lincoln* (Ariz. App. 1987), 155 Ariz. 272, 746 P.2d 13; *Fudenberg v. Molstad* (Minn. App. 1986), 390 N.W.2d 19.) Following *Fudenberg,* these cases have determined that a State court's allocation of the exemption does not interfere with congressional intent of the amendment. We agree with this analysis.

■■■ The former section 152(e) was amended by the Deficit Reduction Act of 1984, Pub. L. 98—369, §423(a), 98 Stat. 494, 799 (1966), to automatically allocate the dependency exemptions to the custodial parent. The reasons for the amendment are explained as follows:

> "The present rules governing the allocations of the dependency exemption are often subjective and present difficult problems of proof and substantiation. The Internal Revenue Service becomes involved in many disputes between parents who both claim the dependency exemption based on providing support over the applicable thresholds. The cost to the parties and the Government to resolve these disputes is relatively high and the Government generally has little tax revenue at stake in the outcome. The committee wishes to provide more certainty by allowing the custodial spouse the exemption unless that spouse waives his or her right to claim the exemption. *Thus, dependency disputes between parents will be resolved without the involvement of the Internal Revenue Service."* (Emphasis added.) (H.R. Rep. No. 432, 98th Cong., 2d Sess., pt. II, *reprinted in* 1984 U.S. Code Cong. & Admin. News 697, 1140.)

The intent of Congress in passing the amendment was to eliminate the Internal Revenue Service's (IRS) role in fact-finding determinations of which parent is entitled to the dependency exemption. It does not appear that the intent was to divest State courts of their authority to allocate exemptions. Under the amendment, the IRS does not need to resolve factual questions of how much support each parent provided as it did under the former section. The IRS is now only concerned with which parent is the custodial parent and whether he has signed a written declaration that he will not claim the exemption.

(*Fudenberg v. Molstad* (Minn. App. 1986), 390 N.W.2d 19.) Accordingly, a State court's allocation of the exemption does not interfere with congressional intent.

To effectuate the allocation, a trial court must be able to order the custodial parent to sign a declaration that he will not claim the exemption. A court order allocating the exemption without the required IRS declaration form (IRS Form 8332) is ineffective to transfer the exemption to the noncustodial parent. (I.R.C. §152(e)(2) (1986); *Cross v. Cross* (W. Va. 1987), 363 S.E.2d 449.) Additionally, the amendment itself contains no requirement that the declaration must be signed voluntarily and does not prohibit State courts to order the custodial parent to sign the declaration. We therefore hold that in dissolution of marriage proceedings, the trial court has within its discretion the power to allocate the tax dependency exemption by ordering the custodial parent to sign a declaration he will not claim the exemption as required under section 152(e). Such an order must provide that the execution of the declaration is contingent upon the custodial parent's receipt of child support payments, if the noncustodial parent is ordered to make them. *E.g., Cross v. Cross* (W. Va. 1987), 363 S.E.2d 449.

In the present case, the trial court found that Ann, as the custodial parent, was entitled to the exemptions. We vacate this portion of the judgment of dissolution and remand the issue to the trial court for a determination of which parent is entitled to the exemptions and for what period of time, if any, the custodial parent must sign the declaration required under section 152(e).

Judgment affirmed in part, vacated in part, and remanded.

SULLIVAN and MURRAY, JJ., concur.