*In re* MARRIAGE OF JEAN E. MADOCH, Petitioner-Appellant, and KENNETH J. MADOCH, Respondent-Appellee.

First District (6th Division)   No. 1—89—1880

Opinion filed April 19, 1991.

1008

Ward P. Fisher, of Chicago, and Albert Koretzky, of DiMonte and Lizak, of Park Ridge, for appellant.

Linda S. Kagan, of Chicago, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

On October 16, 1984, petitioner, Jean E. Madoch, filed a petition for dissolution of her marriage to respondent, Kenneth Madoch. The trial court's judgment on July 10, 1989, dissolved the marriage and awarded petitioner a 55% interest and respondent a 45% interest in the marital condominium and in a Merrill Lynch account. The condominium was valued at $114,000, and the Merrill Lynch account at approximately $15,000. The trial court found that respondent's interests in two bakeries and in certain real estate were nonmarital property. The trial court awarded petitioner, who had since become totally disabled, $500 monthly maintenance. That award was to be reviewed after three years. The parties were ordered to pay their own attorney fees. Petitioner of course does not challenge the judgment of dissolution but appeals from the court's findings and orders with respect to all of the other findings.

The parties were married on April 23, 1981, and resided as husband and wife until May 1984, at which time respondent vacated the marital home. At the time the complaint was filed, petitioner was 49 years old, and respondent was 37 years old. No children were born of the marriage. During the marriage, the parties purchased a condominium located at 3200 Lake Shore Drive, Chicago, at a cost of $105,000 (consisting of $24,000 of petitioner's money accumulated prior to the marriage; a $50,000 gift from respondent's parents; $23,285 from the sale of respondent's former residence from a previous marriage, and the remainder from the joint checking account of the parties). Petitioner testified and the trial court found that the $50,000 received from respondent's parents was a gift to both parties.

At the time of trial, respondent had taken an unpaid leave of absence from his position as a supervisor of the official court reporters in Cook County. Respondent's earnings from that position were approximately $45,000 per year. In addition, respondent earned approximately $3,000 in 1988 for transcribing grand jury transcripts. Respondent currently manages Heck's Bakery, a business in which he

holds a one-third ownership interest. Conflicting testimony exists, as set forth below, concerning the amount of income generated to respondent from Heck's Bakery.

Petitioner was also employed as an official court reporter from 1970 through October 31, 1987. In November 1987, petitioner was diagnosed with cancer. Petitioner's treating physician, Dr. Al Bowen Benson III, opined that petitioner's condition is incurable. Dr. Benson stated that as a result of her therapy, petitioner experienced severe fatigue as well as additional side effects that would prevent her from working as a court reporter. Petitioner testified that she is unable to work because she is very weak and in pain at times.

Petitioner received her previous salary of $36,000 for the first year during her medical leave of absence. Petitioner currently draws $1,500 per month as disability income from social security and the State of Illinois. Petitioner's affidavit indicated that she incurred monthly living expenses in the amount of $1,685 for the previous year. At trial, petitioner estimated her average expenses to be approximately $2,000 per month.

Respondent's interest in two bakeries was among the centrally contested issues, especially as to whether the interest constituted marital property. Petitioner filed a motion *in limine* arguing that respondent made a judicial admission in the pleadings that he acquired an interest in both bakeries during the marriage; therefore, he should be precluded from introducing any evidence contradicting that admission. The trial court denied petitioner's motion and allowed respondent to amend his initial response to show that he had no interest in Augusta Bakery, and that he acquired an interest in Heck's Bakery as a gift from his father.

The record reveals that respondent's father, Leonard Madoch, purchased a 50% interest in Augusta Bakery in 1972 and obtained the remaining interest in 1976. Heck's Bakery, along with the real property located at 2038 W. Roscoe Street, Chicago, was obtained by respondent and his two brothers, Lawrence and Robert Madoch, on January 3, 1984 (during the course of the marriage).

At trial, petitioner called respondent's brother, Lawrence, as an adverse witness. Lawrence testified that Heck's Bakery and the real estate were purchased for approximately $130,000. Respondent, Lawrence and Robert became shareholders in Heck's Bakery, but none of them used any of their personal funds for the purchase; instead the money was drawn from the Cosmopolitan National Bank custodial account funded by their parents. Respondent and Lawrence later entered into a loan agreement with Wells Fargo Credit Corpora-

tion for equity mortgage financing in the amount of $75,000 for working capital and expansion of the business.

Lawrence stated that his father retained 20% of the Augusta Bakery shares, and the remaining stock was split among his 12 grandchildren. Augusta Bakery was rated "Triple A" by Dun and Bradstreet and it was a "money maker." Augusta Bakery was dissolved after failing to pay the annual filing fee, and that property has since been sold for delinquent taxes. Augusta Bakery is also currently known as "Heck's Bakery." According to Lawrence, after the purchase of Heck's Bakery, both businesses and the bread routes were consolidated in Heck's Bakery and operated as one trade name.

Lawrence further testified that respondent received a weekly check for $30 from 1982 through 1986 from Augusta Bakery, and varying amounts of cash ranging from $100 to $350 per week during that same period. Respondent received no cash or checks from either bakery in 1987 or 1988 because of a lack of operating capital in the business due to a union strike and a cash shortage. According to Federal income tax returns, the two bakeries had a combined income of over $70,000 in 1987.

Lawrence stated at a previous deposition that respondent would receive a salary for currently working at the bakery equal to what he had earned as a court reporter (approximately $45,000) after taking over the bakery management in September 1988. Lawrence testified at trial that respondent had not received a salary for working in the bakery during the past three months in order not to deplete working capital.

Robert Madoch, respondent's brother, also testified as an adverse witness. Robert stated that he managed the bakery until September 1988, at which time he quit and respondent became manager. (After his own dissolution of marriage, Robert retained his ownership interest in both bakeries.) Robert considered himself, Lawrence and respondent to be the owners of Augusta Bakery, and he acquired his interest in 1984 from his father. Although he never saw the actual stock, Robert believed there was supposed to be 25% of the stock in his children's names, and that his brothers acquired their interests from his father in the same manner for their children. According to Robert, checks for $20,000 representing the profits from Augusta Bakery were written, but they were never cashed and remain in a safe at the bakery. Robert was not aware that Augusta Bakery had been dissolved or that the bakeries had been consolidated.

Robert testified that he acquired his interest in Heck's Bakery along with his brothers, and the money to purchase the bakery was

drawn from the Cosmopolitan Bank account funded by his father. In the Heck's Bakery annual report for the year 1984, Lawrence is listed as president, respondent was secretary and Robert as treasurer; the three brothers are also listed as its directors.

Robert testified that respondent received weekly checks in the amount of $30 from the bakery and $300 cash per week, but he could not remember the period of time during which the payments began or ceased.

Leonard Madoch, respondent's father, testified as an adverse witness that he was the owner of Augusta Bakery at all times, and that the profits were directed toward his grandchildren. Leonard intended to distribute his interest in the bakery among the grandchildren, with his sons acting as overseers. Leonard testified that he purchased Heck's Bakery with his profit sharing money and gave it to his sons.

Respondent testified as an adverse witness that he did not inherit any interest in Augusta Bakery. He did have an ownership interest in Heck's Bakery, but he did not invest any of his own money toward its purchase.

Respondent testified in his own behalf that the $50,000 used for the purchase of the condominium was a loan from his father without interest for which he had signed a demand note, but that it later became a gift to him. Respondent further testified that while he did pay certain bills from bakery funds, he took no actual income. Respondent did receive checks from the bakery for a number of years, but they were payable to his son by his first marriage and were reported on his income tax returns.

The trial court concluded that respondent's interests in the bakery entities were nonmarital property. The court determined that respondent met his burden of proof primarily through the adverse testimony produced by petitioner. The court relied upon the fact that respondent's father first purchased a 50% interest in Augusta Bakery in 1972 and later increased his holdings to 100%. The judge acknowledged that the testimony of Lawrence conflicted with that of Robert, Leonard and respondent, especially with respect to distribution of earnings and the actual ownership of the various interests. However, the judge found that respondent's interests were sufficiently segregated so as to be classified as respondent's nonmarital property. Having so decided, the judge did not consider the valuation of those business interests.

After considering petitioner's total disability and the fact that she occupied the condominium exclusively since respondent vacated the premises, the trial court awarded her 55% of the marital home, which

had a total value of $114,000, and allowed her 90 days to arrange financing to purchase respondent's remaining 45% interest. If petitioner chose not to purchase the condominium, respondent was extended an equal period of time to buy her 55% interest. Although respondent maintained that the $50,000 obtained from his father was merely a loan, the judge disregarded that argument as there was no indication that these funds were meant to be segregated; rather, the judge found there was a donative intent from respondent's father to both parties.

The Merrill Lynch account held by the parties in the approximate amount of $15,000 was distributed 55% to petitioner and 45% to respondent. The court awarded petitioner her individual retirement account worth approximately $20,000, while respondent was awarded the individual retirement account held in his name valued at $12,000. Petitioner was awarded her personal property and all furnishings in the condominium. Respondent was awarded his personal property and a 1981 Oldsmobile automobile. Each party received the existing value of his or her pension rights, and each was ordered to pay his or her respective attorney fees.

Although respondent appeared to have no source of income because he had taken a leave of absence from his position as a court reporter, the court determined that conflicting testimony existed concerning the salary he received from the two bakeries. The court found that respondent was well able to produce income in the range of $40,000 to $45,000 per year versus the income of petitioner in the amount of $1,500 per month. The court concluded that an award of maintenance was proper, in view of the fact that the parties lived together for approximately three years and the marriage itself was in existence for almost eight years. After considering the lifestyle previously enjoyed by the parties evidenced by their income tax returns, the court awarded petitioner $500 monthly maintenance for a period of 36 months, reviewable in three years.

On appeal, petitioner contends that the trial court erred in finding that respondent's bakery and real estate interests were nonmarital property. Petitioner further argues that the trial court's 55% distribution to her of the condominium and assets in the Merrill Lynch account was inequitable in light of the significant amount of money she contributed toward their purchase and her subsequent disability. Petitioner also argues that the maintenance award of $500 was inadequate and that the trial court should have ordered respondent to pay her attorney fees.

■ Under the Illinois Marriage and Dissolution of Marriage Act, the trial court is first required to divide the parties' property into marital and nonmarital property. Nonmarital property includes property acquired by gift, legacy or descent. Next, each spouse is assigned his own nonmarital property. (Ill. Rev. Stat. 1987, ch. 40, par. 503.) All property acquired during the marriage is presumed to be marital property unless the presumption is overcome by a showing that it falls within one of the statutory exceptions. The party claiming that the property is nonmarital has the burden of proof. *In re Marriage of Schriner* (1980), 88 Ill. App. 3d 380, 410 N.E.2d 572, citing *In re Marriage of Amato* (1980), 80 Ill. App. 3d 395, 399 N.E.2d 1018.

Initially, we reject petitioner's argument that respondent made a binding judicial admission in his verified answer thereby foreclosing him from presenting certain evidence relative to the claimed nonmarital property.

In her petition for dissolution filed on October 26, 1984, petitioner alleged that the parties acquired marital property including an interest in both bakeries. Respondent's answer, filed December 10, 1984, did not deny that he had acquired the interest subsequent to the marriage, but stated that the interest was acquired by legacy or descent. Nearly five years later, petitioner filed a motion *in limine* asking that respondent be restricted from offering any evidence other than that he acquired the interest by inheritance. Petitioner stated that she did not wish to be taken by surprise at trial by other proof of the manner of acquisition of the property. Respondent filed a response to the motion *in limine* pointing out that he had denied in his answer that the bakery interest was marital property. He asserted that in the course of these proceedings he had been required to give three depositions. With regard to the bakeries, he had consistently stated that his interest, if any, was acquired by gift. Therefore, there could be no surprise to petitioner. He asked in his response and was granted leave by the court to amend his original answer so as to show that while any interest in the bakeries was nonmarital, it was not inherited. There is no indication in the record that an amended answer was filed. In May 1989, the trial court denied petitioner's motion *in limine*.

■ Notwithstanding the absence of an amended answer in the record, we hold that the trial court acted well within its discretion in denying petitioner's motion *in limine*. Respondent had denied that the bakeries constituted marital property. The issue had been explored by the parties for several years. It is clear that petitioner was not and could not be surprised by respondent's claim that as to any interest he possessed in the bakeries he had acquired by gift. Indeed, we be-

lieve that it would have been an abuse of discretion to deny respondent the opportunity to present a valid defense. See *Madison Associates v. Bass* (1987), 158 Ill. App. 3d 526, 511 N.E.2d 690.

■ We also find that the trial court had ample evidence to conclude that respondent met his burden of proving that his interest in the bakeries was nonmarital property acquired by gift from his father. It is undisputed that respondent's father initially purchased his interest in Augusta Bakery in 1972 and the remaining interest in that enterprise in 1976. Robert, Lawrence and respondent all testified consistently that Heck's Bakery was purchased with funds from a bank account funded by their father, and that none of them invested any of their personal funds towards its purchase. Lawrence and respondent later entered into a business loan agreement with a credit corporation for equity financing. Petitioner was not a party to that loan transaction, nor was any evidence presented that she took part in any of the business activities or operations of the bakeries.

While we agree with the trial judge that the adverse testimony of Robert, Leonard and Lawrence was inconsistent with respect to income derived from the bakeries and actual ownership, we find that sufficient evidence existed to show that respondent's interest in these business entities constituted nonmarital property acquired by gift.

■ Next, we consider petitioner's contention that the trial court erred in awarding her 55% of the marital property and 45% to respondent. Section 503(d) of the Act directs the court to divide the parties' property in just proportions. (Ill. Rev. Stat. 1987, ch. 40, par. 503(d).) An equitable award, however, does not require that the marital estate be divided equally. (*In re Marriage of Harding* (1989), 189 Ill. App. 3d 663, 545 N.E.2d 459, citing *In re Marriage of Randall* (1987), 157 Ill. App. 3d 892, 510 N.E.2d 1153.) The trial court's distribution of marital property rests within its sound discretion and will not be disturbed on review absent an abuse of that discretion. (*In re Marriage of Heller* (1987), 153 Ill. App. 3d 224, 505 N.E.2d 1294.) An abuse of discretion occurs only when no reasonable person would take the view adopted by the trial court. *In re Marriage of Harding*, 189 Ill. App. 3d 663, 545 N.E.2d 459, citing *In re Marriage of Brooks* (1985), 138 Ill. App. 3d 252, 486 N.E.2d 267.

■ Under section 503(d), a court may consider the following factors when apportioning property: each spouse's contribution to or dissipation of the marital property; the value of the property set apart to each spouse; the duration of the marriage; the relative economic circumstances of the parties; the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate,

liabilities, and needs of each of the parties; the custodial provisions for any children; whether the apportionment is in lieu of or in addition to maintenance; the opportunity of each spouse for acquisition of capital assets and income; and the tax consequences of the property divison upon the respective economic circumstances of the parties. Ill. Rev. Stat. 1987, ch. 40, par. 503(d).

■ Upon review of these statutory guidelines and the conflicting testimony presented by Lawrence, Robert, Leonard and respondent (acknowledged by the trial judge) pertaining to respondent's interests and income from the bakeries, we find that the trial court failed to distribute the marital assets in just proportions. While the trial judge did not consider the value of respondent's interests in the bakeries because he determined that they were nonmarital property, we find that respondent has the ability to generate significant future income from the value of that property set apart to him. In contrast, petitioner's total disability as the result of illness precludes her from returning to her former occupation as a court reporter, thereby limiting her employability and sources of income. Accordingly, we hold that the trial court abused its discretion in granting petitioner only 55% of the marital property, while granting respondent 45%. Those assets consisted of a condominium valued at $114,000, and a $15,000 Merrill Lynch account. Ordinarily, we would remand the matter to the trial court to reexamine its distribution. However, in the present case, the record contains sufficient facts to enable us to order a redistribution. Consequently, we direct that petitioner's share in the condominium and Merrill Lynch account be increased from 55% to 75%, and respondent's share be decreased from 45% to 25%.

■ ■ Petitioner also contends that the trial court's award of $500 monthly maintenance is inadequate in view of her total disability. Section 504(a) of the Act provides that a court may grant maintenance only if it finds that the spouse seeking maintenance lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs; is unable to support herself through appropriate employment; or is otherwise without sufficient income. (Ill. Rev. Stat. 1987, ch. 40, par. 504(a).) Maintenance is to be awarded in such amounts and for such periods of time as the court deems just, after consideration of various factors, including the following: the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment; the standard of living established during the marriage; the age and the physical and emotional condition of both parties; and the ability of the spouse from whom maintenance is sought to meet his or her

needs while meeting those of the spouse seeking maintenance. (Ill. Rev. Stat. 1987, ch. 40, par. 504(a).) An award of maintenance will not be overturned absent an abuse of discretion by the trial court. *In re Marriage of Heller*, 153 Ill. App. 3d 224, 505 N.E.2d 1294.

In this case, we find that the monthly maintenance awarded by the court was not an abuse of its discretion. Petitioner testified that her monthly expenses total $2,000, and that she receives $1,500 per month as disability income. In consideration of the trial court's award of $500 as monthly maintenance, we conclude that petitioner has adequate resources available to meet her monthly expenses. We also note that after three years from entry of the award it is subject to review by the court; at which time, depending upon the circumstances, the award could be continued or even increased.

Lastly, petitioner contends that the court improperly denied her request for attorney fees. Section 508 of the Act provides that the court may order either spouse to pay attorney fees incurred by the other spouse after it considers the financial resources of the parties. (Ill. Rev. Stat. 1987, ch. 40, par. 508.) After considering the property distributed to petitioner, the court found that each party should be responsible for payment of his or her own attorney fees. The petitioner has not demonstrated an inability to pay her own attorney fees, and we uphold that ruling. It must also be pointed out that in this court and in at least part of the trial court proceedings, petitioner has been represented by her brother.

For the reasons stated, the judgment of dissolution is affirmed. The order of the circuit court of Cook County finding that respondent's interests in the businesses and the real estate at 2038 W. Roscoe Street were nonmarital property is also affirmed. The order granting 55% of the marital property to petitioner is increased to 75% distribution, and respondent's portion of the marital assets is decreased from 45% to 25%. The orders granting monthly maintenance of $500 to petitioner and holding each party responsible for payment of his or her own attorney fees are affirmed.

Judgment affirmed in part; modified in part and remanded with directions.

RAKOWSKI, P.J., and LaPORTA, J., concur.