In re MARRIAGE OF DIANE K. PATRICK, Petitioner-Appellant and DAVID I. PATRICK, Respondent-Appellee.

Fourth District   No. 4—91—0904

Opinion filed August 27, 1992.

Dale A. Cini, of Ryan, Bennett & Radloff, of Mattoon, for appellant.

Richard L. James, of Massey, Anderson & Gibson, of Paris, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In September 1990, Diane Patrick filed a petition to dissolve her 12-year marriage with David S. Patrick, respondent. In November 1991, the trial court ordered the marriage dissolved, distributed the property of the parties, and ordered David to pay $1,000 per month in maintenance for one year. Diane appeals, arguing that the trial court (1) improperly designated certain farm equipment and crops as David's non-marital property, and (2) abused its discretion in awarding only $1,000 per month in maintenance for only one year.

We agree, reverse, and remand.

## I. FACTS

Diane and David married in 1978 in Paris, Illinois, and resided there during their entire marriage. No children were born of this marriage. After separating in August 1990, Diane has lived with her mother, as she had prior to the marriage. David still lives in the marital home he owned and lived in before the marriage.

A hearing on Diane's petition was held in July 1991. At the time of that hearing, Diane was a 50-year-old high school graduate who had attended one semester of college; David was a 42-year-old farmer. The hearing dealt primarily with determining appropriate maintenance and identifying marital property. The trial court noted that Diane entered

the marriage with few assets and earned a minimal wage as a book-keeper during the first five years of the marriage. The court further noted that David had provided the financial support for the two during the marriage. Because of these factors, the trial court focused solely on David's assets and income during the marriage in determining what constituted marital property. Accordingly, the trial court subtracted David's net worth in 1978 when he married Diane from his net worth in 1991. The court then labeled his net worth in 1978 as nonmarital property and the difference as marital property. Specifically, the court found that David's net worth at the time of the 1978 marriage was $270,950, which included $229,100 in farm equipment. Even though David had since traded much of the equipment he owned in 1978 for new farm equipment, the court held that in 1991, at the time of the dissolution of marriage, David still owned $270,950 worth of farm equipment as nonmarital property. The court then found that his 1991 net worth was $346,500, including the $270,950 in farm equipment. (The value of the farm equipment increased as David traded in old equipment and purchased new equipment.) Therefore, the court concluded that the difference between David's 1978 net worth and his 1991 net worth—$75,550—constituted the totality of the marital property, to be split equally between Diane and David.

From the time of their 1990 separation, Diane did not work. Instead, she received support from David and lived rent-free with her mother. David gave her money whenever she asked for it during the separation. She also took out a $10,000 personal loan, some of which she used to pay her mother's income taxes and for some repairs on her mother's house. Diane also spent over $17,944 on David's credit cards. At the hearing, she admitted that she did so out of spite, explaining, "Well, I don't imagine I'm the first wife who got a little angry at the situation and maxed her credit cards." The trial court thus found that she had dissipated $17,944 in marital assets and subtracted $8,972 (half of $17,944) from her half of the marital property ($75,550 / 2 = $37,775). She therefore received only $28,803 ($37,775 - $8,972) as her share of the marital property.

Diane requested $1,500 per month in maintenance. When David's attorney noted that she had just spent $17,944 on a new wardrobe, but that she was still requesting $300 per month for clothing expenses (as part of her itemized $1,500 request), she admitted that she did not need the money for clothing, but explained, "I feel that David owes me something if he's going to prolong the divorce. He owes me something. *** It doesn't make any difference, I don't think, to [sic] what I spend it on."

The trial court awarded Diane maintenance of $1,000 per month for one year.

## II. Analysis

### A. *Farm Equipment and Business As Marital or Nonmarital Property*

Diane first argues that the trial court erred in determining what property belonging to her and David was marital and what property was nonmarital. Specifically, she argues that the court improperly determined that the difference between the net worth of David's farm operation in 1978 and 1991 constituted all of the marital property. Instead, she argues that all of the farm equipment purchased after 1978 and the crops on hand from the 1991 harvest should be included as marital property. We agree.

David rents most of the land he farms but owns all the equipment and crops. Thus, his farm is analogous to a store where the shopkeeper owns the inventory and fixtures, but rents the space. When David and Diane married in 1978, he tenant-farmed about 1,100 acres. During the marriage, he acquired a one-eighth ownership interest in a 343-acre farm (42⅞ acres, if divided). He testified that in 1991, he farmed a total of 1,400 acres, but owned only a small portion of those acres.

During the 13 years of the marriage, David gradually replaced much of his equipment. The parties presented the trial court with separate appraisals of the farm equipment done in July and September 1990 by different companies (designated herein as "List A"), which included the year (if available) that David purchased each item in question:

### LIST A

| | Sept. | July |
|---|---|---|
| John Deere 7720 Titan II Combine (1987) | $ 58,000 | $ 57,500 |
| John Deere 4640 Row Crop Tractor (1978) | $ 25,000 | $ 29,000 |
| John Deere 643 Cornhead (1986) | $ 11,500 | $ 7,000 |
| John Deere 653A Row Crop Bean Head (1987) | $ 11,000 | $ 8,000 |
| John Deere 12-Row Cultivator w/ Transport | $ 2,000 | $ 2,000 |
| IH 1486D Tractor (1981) | $ 15,000 | $ 15,000 |
| IH 800 Cyclo Air Planter—12 Row | $ 15,000 | $ 22,000 |
| IH 183 Cultivator—12 Row | $ 4,500 | $ 6,000 |
| IH 18-ft. Wheel Disk | $ 800 | $ 1,000 |
| IH 1300 9-ft. Sickle Mower | $ 600 | ---- |
| Sunflower 31-ft. Tillage Tool | $ 7,500 | $ 15,000 |
| Bush Hog 15-ft. Batwing Mower (1988) | $ 4,500 | $ 5,500 |
| M&W Earth Master, Model 1460 | $ 6,000 | $ 7,000 |

| | | |
|---|---:|---:|
| Marliss 3-Point Hitch Drill | $ 3,500 | $ 2,800 |
| Best Way Pull-Type Sprayer—30-ft. Boom | $ 2,000 | $ 2,000 |
| M&W Little Red Wagon, 425 Bushel | $ 2,000 | $ 2,500 |
| Mayrath 55-ft. Auger | $ 800 | $ 500 |
| 28-ft. Auger—5 hp Electric Motor | $ 500 | ---- |
| Mayrath Swing Around Auger, 62 ft. | ---- | $ 2,750 |
| Westfield Auger, 61 ft. (1989) | $ 1,500 | $ 1,850 |
| Harogator—Fold up Harrow | $ 300 | $ 700 |
| Flatbed Trailer, 16 ft. | $ 1,000 | $ 1,400 |
| Total | $173,000 | $189,500 |

David did not testify, and the record does not otherwise reveal, whether a particular piece of equipment on List A replaced an older piece of equipment or instead added to David's inventory of equipment. However, David did testify that over the years, when he purchased new equipment to replace older equipment he owned prior to his marriage in 1978, he traded in that older equipment as part of the transaction. Thus, much of the equipment on List A is property acquired *in part* in exchange for property David owned prior to the marriage. Nonetheless, David presented no evidence as to the value of any trade-in he received when he purchased new equipment, and the record contains no such evidence.

David also owned the following property before, during, and after the marriage, and the value of that property is again reflected by separate appraisals in the following list (designated as "List B"):

### LIST B

| | Sept. | July |
|---|---:|---:|
| Steiger Panther 1460 4-wheel dr. Tractor | $30,000 | $37,500 |
| IH 856D Tractor (1969) | $ 5,000 | $ 5,000 |
| IH 574 Utility Tractor with Loader (1972) | $ 6,000 | $ 5,500 |
| IH 706D Tractor (1965) | $ 3,500 | $ 3,250 |
| John Deere 709 7-ft. Mower | $ 1,000 | $ 1,000 |
| IH 700 Plow 8-18 | $ 1,000 | $ 2,500 |
| IH 710 Plow | $ 600 | $ 400 |
| John Deere 30-ft. 400 Hoe with Transport | $ 2,800 | $ 2,850 |
| E-Z Flow Wagon with Hyd. Auger | $ 1,200 | $ 1,700 |
| E-Z Flow Wagon | $ 1,000 | $ 1,700 |
| John Deere 400 Lawn Mower, 60-inch Deck | $ 2,500 | $ 2,750 |
| Total | $54,600 | $64,150 |

Combining these two lists, the value of David's farm equipment is as follows:

|  | Sept. | July |
|---|---|---|
| Total, LIST A | $173,000 | $189,500 |
| Total, LIST B | $ 54,600 | $ 64,150 |
| Total Farm Equipment | $227,600 | $253,650 |

These lists serve more for reference than as final figures because the trial court did not use this information in determining the value of David's farm equipment. Instead, the trial court used the estimated value of farm equipment that David entered on a financial statement in January 1991 when he requested a loan from the Citizen's National Bank in Paris (CNB). The court also used similar data from a financial statement David prepared in January 1990.

In its memorandum explaining its conclusions, the trial court made the following calculations in determining David's net worth:

| "Assets |  | Liabilities |  |
|---|---|---|---|
| Cash | $ 5,000 | CNB Operating Loan | $115,000 |
| Crops | $165,000 | CNB Land | $ 17,163 |
| Hedging Accounts | $ 2,388 | John Deere | $ 30,843 |
| Machinery | $294,050 | Res. for Income Tax | $ 15,000 |
| ⅛ Int.343 A. | $ 58,068 |  |  |
|  | $524,506 |  | $178,006 |
| Net Worth | $346,500" |  |  |

The trial court selected these figures from several different sources. For instance, the $294,050 estimate for machinery comes from David's 1991 financial statement, which also lists his John Deere loan liability at $15,421, his cash on hand at $15,000, his CNB operating loan at $140,000, and his CNB land loan at $6,151. However, the John Deere loan figure of $30,843 and the cash figure of $5,000 that the court used come from David's 1990 financial statement, which also lists his machinery as worth $316,050, his CNB operating loan at $94,574, and his CNB land loan again at $6,151. Thus, although David's 1990 and 1991 financial statements both contain values for his machinery, John Deere loan, cash on hand, two CNB loans, along with crop estimates and other information, the trial court selectively used

the figure from the 1991 financial statement for David's machinery, and used the figures from his 1990 financial statement for cash on hand and the John Deere loan amounts. The CNB loan amounts, on the other hand, came from David's testimony at the September 1991 hearing—when he said he had reduced the CNB loans to the above quoted amounts—and the crop estimates apparently came from David's testimony of the market price for the quantity of crops he held in storage and the expected fall harvest.

Sections 503(c)(1) and (c)(2) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1991, ch. 40, pars. 503(c)(1), (c)(2)) provide as follows:

"(1) When marital and non-marital property are commingled by contributing one estate of property into another resulting in a loss of identity of the contributed property, the classification of the contributed property is transmuted to the estate receiving the contribution, subject to the provisions of paragraph (2) of this subsection; provided that if marital and non-marital property are commingled into newly acquired property resulting in a loss of identity of the contributing estates, the commingled property shall be deemed transmuted to marital property, subject to the provisions of paragraph (2) of this subsection.

(2) When one estate of property makes a contribution to another estate of property, or when a spouse contributes personal effort to non-marital property, the contributing estate shall be reimbursed from the estate receiving the contribution notwithstanding any transmutation; provided, that no such reimbursement shall be made with respect to a contribution which is not retraceable by clear and convincing evidence, or was a gift, or, in the case of a contribution of personal effort of a spouse to non-marital property, unless the effort is significant and results in substantial appreciation of the non-marital property. Personal effort of a spouse shall be deemed a contribution by the marital estate. The court may provide for reimbursement out of the marital property to be divided or by imposing a lien against the non-marital property which received the contribution."

■ An article written by James H. Feldman and Charles J. Fleck, the drafters of the 1983 amendments to section 503 of the Act (see Pub. Act 83—129 §1, eff. Aug. 19, 1983 (1983 Ill. Laws 1526, 1527-28)), suggests an analysis we find appropriate for trial courts to use when apportioning property belonging to the parties. (See Feldman & Fleck, *Taming Transmutation: A Guide to Illinois' New Rules on Property Classification and Division Upon Dissolution of Mar-*

*riage*, 72 Ill. B.J. 336 (1984) (hereinafter Feldman & Fleck).) First, the court should classify such property as marital or nonmarital. (Feldman & Fleck, 72 Ill. B.J. at 338-39.) Second, the court should determine whether the estate that receives a particular item of property owes the other estate reimbursement. (Feldman & Fleck, 72 Ill. B.J. at 339-40.) Third, if either estate does owe reimbursement, the court must determine the value of the item in question in order to determine the amount of reimbursement. (Feldman & Fleck, 72 Ill. B.J. at 340-44.) Fourth, the court should calculate the division, as adjusted for reimbursements, and then actually assign the property accordingly. (Feldman & Fleck, 72 Ill. B.J. at 346.) The article also proposes certain presumptions and rules that a court should employ when addressing these issues, as further described below.

Using this analysis, we must first decide whether the crops grown and the farm equipment purchased during the marriage constitute marital or nonmarital property. Without citing any authority or arguing how the statutory scheme supports his case, David asserts that fairness requires both the farm equipment and crops to be deemed his nonmarital property. We disagree.

■ Section 503 of the Act provides that all property acquired by either spouse during the marriage presumably constitutes marital property *unless* the party claiming otherwise can prove that the property fits into one of eight enumerated exceptions contained in section 503(a) (Ill. Rev. Stat. 1991, ch. 40, par. 503(a)). An exception that could have been applicable in this case—the first clause of section 503(a)(2) (Ill. Rev. Stat. 1991, ch. 40, par. 503(a)(2))—provides that property acquired in exchange for property acquired before the marriage constitutes nonmarital property.

Diane appropriately admits that the equipment on List B constitutes David's nonmarital property acquired before the marriage. However, she argues that the property on List A constitutes marital property because David bought it during the marriage. David, on the other hand, argues that the property on List A is nonmarital property because it was acquired in exchange for farm equipment he owned prior to the marriage.

■ Focusing on the second clause of section 503(c)(1), we find that the farm equipment on List A constitutes newly acquired, transmuted marital property, which was derived from commingled marital and nonmarital property, resulting in a loss of identity of the contributing estates. Specifically, David's nonmarital estate contributed the trade-in value of the old equipment, while the marital estate contributed funds that David earned from his work on the farm. The com-

mingled property from both estates has lost its identity because the purchase resulted in a new piece of property: the newly acquired equipment. Under section 503(c)(1) of the Act, commingled property transmutes to marital property, subject to the right of reimbursement, when the properties contributed from the nonmarital and marital estates lose their identity. (Ill. Rev. Stat. 1991, ch. 40, par. 503(c)(1).) The farm equipment on List A constitutes transmuted marital property, subject to a possible right of reimbursement to David for the contribution of his nonmarital property. See Feldman & Fleck, 72 Ill. B.J. at 338.

■ Section 503(c)(2) establishes certain presumptions when determining whether the marital estate owes reimbursement to the nonmarital estate for the value of its contribution to transmuted marital property. First, the party claiming a right to reimbursement must trace the amount of the contribution by clear and convincing evidence. (Ill. Rev. Stat. 1991, ch. 40, par. 503(c)(2).) In this case, David could have done so by proving how much he received for trading in his old equipment when he purchased the new equipment on List A. However, he failed to present any such evidence, although he implied that he had the information "at home."

Second, the party claiming a right to have his or her nonmarital estate reimbursed for its contribution to transmuted marital property must prove that he or she did not intend to make the contribution a gift to the marital estate. In the absence of such evidence, such a gift will be presumed. (Ill. Rev. Stat. 1991, ch. 40, pars. 503(c)(1), (c)(2).) David could have presented such evidence by testifying that he did not intend to make a gift to the marital estate when he traded in his old equipment as part of the purchase of the new equipment. (See *In re Marriage of Cecil* (1990), 202 Ill. App. 3d 783, 789-90, 560 N.E.2d 374, 378 (trial court erred by not allowing former husband to testify on his donative intent—or lack thereof—regarding certain property).) (We quickly add that although the trial court would have been under no obligation to believe that testimony, the court could have if it found that testimony credible.) However, David did not so testify and therefore failed to present any evidence to overcome the presumption.

■ Accordingly, the newly acquired farm equipment constitutes transmuted marital property for which the marital estate owes no reimbursement to David's nonmarital estate. Under this analysis, the 1991 crops also constitute marital property. David's income from the farm operation is all marital property, including those forms of the product of his labors—such as crops in storage—that

have not yet been sold. Thus, the $165,000 worth of crops in storage constitutes marital property. To be consistent, however, we point out that the operating loan of $115,000 constitutes marital debt and must be considered by the court when it divides the marital property. On remand, the court should determine whether any other expenses or liabilities attributed solely to David should instead be deemed marital expenses or liabilities.

"The trial court's findings concerning the allocation of marital property *** will not be reversed absent an abuse of discretion." (*In re Marriage of Hazel* (1991), 219 Ill. App. 3d 920, 922, 579 N.E.2d 1265, 1267.) A trial court abuses its discretion when it ignores recognized principles of law so that substantial prejudice results. (*In re Marriage of Pittman* (1991), 212 Ill. App. 3d 99, 101, 569 N.E.2d 1278, 1280.) In the present case, the trial court did not apply the recognized principles of law stated herein, but instead used an approach contrary to the statutory scheme.

For the reasons stated, we reverse the trial court's determination that the difference between David's net worth prior to the marriage and at the end of the marriage constitutes the entire marital property. Instead, we hold that all the farm equipment David purchased during the marriage (List A) constitutes marital property, as do the crops. Having so held, we remand to the trial court for further proceedings on the disposition of property between the parties in accordance with the views expressed herein and with the provisions of section 503 of the Act.

We add that on remand of this case to the trial court for further proceedings regarding the disposition of property between the parties, the parties should not be permitted to present evidence on the issue of whether particular items of property discussed in this opinion could be the basis for reimbursement under section 503(c). The parties have had a full and fair opportunity to present evidence, and the court should not hear any further evidence on remand.

### B. *Maintenance*

The trial court ordered David to pay maintenance to Diane of $1,000 per month for one year. Diane argues on appeal that the trial court abused its discretion in doing so due to the gross disparity in the parties' estates and earning potentials. We need not address this issue in any detail because our reversal of the trial court's property allocation and distribution requires that the trial

court be given the opportunity to visit anew the matter of maintenance.

Section 504(a) of the Act authorizes the court to award maintenance only if it finds that the spouse seeking maintenance lacks sufficient property, including marital property, to provide for her reasonable needs and is unable to support herself. (Ill. Rev. Stat. 1991, ch. 40, par. 504(a); see also *In re Marriage of Wade* (1987), 158 Ill. App. 3d 255, 269, 511 N.E.2d 156, 166.) In determining the amount of maintenance, the trial court should consider all relevant factors, including the parties' financial resources, education, standard of living during the marriage, age, physical and emotional condition, and the duration of the marriage. (Ill. Rev. Stat. 1991, ch. 40, par. 504(b); *Wade*, 158 Ill. App. 3d at 269, 511 N.E.2d at 166.) The trial court has the discretion to set maintenance as it sees appropriate, and we will not disturb its judgment absent an abuse of discretion. *Wade*, 158 Ill. App. 3d at 268-69, 511 N.E.2d at 166.

■ Section 504(b)(1) of the Act states that the trial court should consider the financial resources of the party seeking maintenance, *including the marital property apportioned to that party*. (Ill. Rev. Stat. 1991, ch. 40, par. 504(b)(1).) Because we have reversed the trial court's judgment on property allocation, on remand the trial court will first have to determine what marital property should be awarded to Diane before the court considers anew her · maintenance award. Thus, at this point, the only action we need take is to vacate the trial court's maintenance order and instruct it on remand to reset maintenance in accordance with our decisions in *In re Marriage of Kerber* (1991), 215 Ill. App. 3d 248, 250-54, 574 N.E.2d 830, 831-34, and *In re Marriage of Carpel* (1992), 232 Ill. App. 3d 806, 827-31. We further note that in order to prevent hardship to David and prevent his needing to sell his equipment to comply with orders the trial court may enter, the trial court has the discretion to order that David pay Diane her share of the marital property in periodic payments.

### C. *The Necessity to Remand*

Citing *In re Marriage of Orlando* (1991), 218 Ill. App. 3d 312, 577 N.E.2d 1334, and *In re Marriage of Madoch* (1991), 212 Ill. App. 3d 1007, 571 N.E.2d 1029, Diane requests us to reapportion the marital and nonmarital assets and reset maintenance in lieu of remanding this case to the trial court. In *Orlando*, the appellate court reversed the trial court's determination that certain stock held in joint tenancy constituted the former wife's nonmarital prop-

erty. The appellate court affirmed the trial court in all other respects and remanded with instructions that the trial court give two-thirds of the stock to the former wife and one-third to the former husband. The appellate court did so because "the record contain[ed] sufficient facts to enable [it] to order a redistribution." *Orlando*, 218 Ill. App. 3d at 318, 577 N.E.2d at 1340.

In *Madoch*, the appellate court affirmed the trial court's allocation of the parties' property into marital and nonmarital estates, but reversed the trial court's distribution of the marital property. The trial court awarded the former wife 55% of the marital property and awarded the former husband 45%. Based on the disparate income potential of the parties, the appellate court redistributed the marital property so that the former wife received 75% and the former husband received 25%. *Madoch*, 212 Ill. App. 3d at 1016, 571 N.E.2d at 1034.

Although the record in the present case does provide substantial evidence that could permit us to reallocate and distribute the marital property, the parties have not had the opportunity to argue the appropriate distribution of the property in light of this court's reallocating the marital and nonmarital property. Accordingly, we conclude that the issues of property allocation and maintenance should be addressed anew by the trial court on remand in accordance with the views expressed herein.

### III. Conclusion

For the reasons stated herein, we reverse the trial court's maintenance order and disposition of the parties' property and remand for further proceedings.

Reversed and remanded with directions.

McCULLOUGH and COOK, JJ., concur.