*In re* MARRIAGE OF TERESA LOU BOOTH, Petitioner-Appellant and Counterappellee, and GERALD LEE BOOTH, Respondent-Appellee and Counterappellant.

Fourth District   No. 4—93—0349

Argued November 9, 1993.—Opinion filed December 30, 1993.

Priscilla Ragle Ebdon, of Charleston, for appellant.

Robert Alan Dunst, of Mattoon, for appellee.

JUSTICE LUND delivered the opinion of the court:

This is an appeal by petitioner Teresa Lou Booth and a cross-appeal by respondent Gerald Lee Booth from an order of the circuit court of Coles County dividing assets, setting child support payments, setting maintenance payments, and ordering partial payment of petitioner's attorney fees. Custody, visitation, and dissolution are not at issue.

Petitioner contends on appeal that the trial court failed to reimburse the marital estate for its contribution to nonmarital property, and that the court abused its discretion in the division of property and erred in not ordering respondent to pay all petitioner's attorney fees. Respondent contends on appeal that the trial court erred in ordering respondent to pay any of petitioner's attorney fees, abused its discretion by ordering child support payments in an amount greater than the statutory guidelines, and erred in awarding maintenance in the amount of $800 per month for 36 months.

Petitioner and respondent were married May 14, 1985. Two children were born of this marriage, Jeremy on August 22, 1988, and Jennifer on September 23, 1989. As of October 1991, petitioner was 29 years of age and respondent was 44. Respondent was married two times previously and was paying child support for his children born prior to this marriage. Prior to, during, and after breakdown of the marriage, respondent had operated his own business, Mattoon Mattress Factory. Petitioner did not work following the birth of their children. At the time of the dissolution, petitioner was seeking her licensed practical nurse degree, with the intent of obtaining a registered nurse (RN) degree sometime in 1995.

The March 23, 1993, judgment of dissolution awarded petitioner custody, subject to visitation. Child support payments were set at $200 per week, with the court stating it was based upon a $33,392 net income and was greater than statutory guidelines because of Jeremy's health problems. Petitioner was ordered to pay 25% of the children's medical expenses incurred after October 22, 1992, and respondent was ordered to pay the remaining 75%, plus all amounts incurred prior to October 22, 1992. The family had no health insurance. Respondent was to claim the children as exemptions on his income-tax returns. All real estate and the respondent's business were deter-

mined to be his nonmarital assets, and all personal property and motor vehicles were divided.

The court awarded petitioner maintenance of $800 per month for a 36-month period beginning November 22, 1992. The ending of this maintenance was consistent with the projected date petitioner would receive her RN degree. Respondent was also ordered to pay most of the debts and $1,400 of petitioner's $3,035 attorney fees.

## PROPERTY AWARD

Respondent began Mattoon Mattress Factory in 1976, and this business was the source of family income during the marriage. Prior to the marriage, he also purchased a business property located in Terre Haute, Indiana, with a type of installment loan contract. He also owned a 15-acre tract of rural land prior to the marriage, and this became the location of the family residence. Following the marriage, respondent purchased a mobile home which was subsequently replaced by a larger home. All real estate, home titles, and loans were solely in respondent's name. An analysis of the property ownership is necessary to understand the property award.

## RURAL ACREAGE

Prior to the marriage, respondent purchased 15 acres of partially wooded rural real estate, which was used prior to and during the marriage as security for financing the Terre Haute business property. During their marriage, the parties first lived in a trailer home on this tract and later in a preconstructed 60- by 28-foot new home placed on the tract. This real estate was always titled in respondent's name. The various mortgages described in this opinion were signed only by respondent.

The 15-acre tract is elongated and, in the fall of 1990, 1.2 acres of frontage property were sold for $9,000, netting respondent $8,233.50. After this sale, respondent's frontage was reduced to about 70 feet. The mortgage history and home construction history are as follows.

On August 24, 1984, respondent secured a mortgage on the 15-acre tract for $35,000 due August 30, 1987. Evidence indicates $32,000 of this amount was used to pay the balance owing on the lease purchase contract encumbering the Terre Haute property.

On August 28, 1987, this mortgage was extended as security for a $16,702.42 note signed by respondent, which represented the unpaid balance on the $35,000 note.

On January 31, 1989, a new mortgage was executed to secure $24,500, and this debt was due January 31, 1992. Proceeds of this

loan were used to pay the prior mortgage balance of approximately $6,000, to pay $5,247 on the house trailer, and the balance used for homesite improvements and a pickup truck debt.

The real estate located in Terre Haute was sold in early 1989 for $25,000, and the $24,500 mortgage loan was paid in full from sale proceeds.

On March 21, 1989, respondent executed an installment note in the amount of $37,000. This note carried a 12.4998% annual cost of credit and required 60 monthly payments of $835.60. Collateral was the new 60- by 28-foot "trailer home." Evidence indicated this home cost a total of $42,290 and the prior trailer home was used as a trade-in.

On August 30, 1991, respondent executed a mortgage on the 15-acre tract, less the 1.2 acres sold in the fall of 1990. This mortgage was for $65,977.80, but evidence indicates the interest cost was included in that amount. The actual debt incurred was $50,000. The balance owing of approximately $24,000 on the March 21, 1989, installment note was paid from the $50,000. In addition, an $8,000 note dated February 14, 1991, was paid. A $10,000 loan was made to Illinois Mattress Company in Champaign and the balance, according to respondent, was used to pay estimated income-tax payments and medical bills. The $8,000 from the February 14, 1991, note was used to demolish an old building and erect a new one at Mattoon Mattress Factory.

The evidence would sustain a finding that, prior to the 1989 sale of the Terre Haute property, income from that property was used to make the monthly installments due on the mortgages placed on the rural property.

Petitioner claims the marital estate should be reimbursed for contributions made to respondent's nonmarital property from marital income. Unless excepted by the provisions of sections 503(a)(1) through (a)(8) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (Ill. Rev. Stat. 1991, ch. 40, pars. 503(a)(1) through 503(a)(8)), all property acquired by the parties during a marriage is marital property. The important provisions for purposes of this case are sections 503(a)(6) and (a)(8). Rental income from respondent's Terre Haute property, as well as income from the sale of that property, was not marital property unless it became so by being commingled with marital assets. Ill. Rev. Stat. 1991, ch. 40, par. 503(c).

■ Respondent cites our court's opinion in *In re Marriage of Patrick* (1992), 233 Ill. App. 3d 561, 599 N.E.2d 117, which recognized that when earned income (assumed marital property) from a

farm operation is used to purchase new farm equipment, a transmutation to marital property, subject to the right of reimbursement, occurs. *Patrick*, 233 Ill. App. 3d at 568-70, 599 N.E.2d at 122-23.

The importance of *Patrick* is the recognition that when marital income is used together with nonmarital property to purchase new property, the resulting asset is considered marital. This is dictated by section 503(c)(1) of the Marriage Act (Ill. Rev. Stat. 1991, ch. 40, par. 503(c)(1)). Reimbursement, on proof of no intent to make a gift, may be available. See Ill. Rev. Stat. 1991, ch. 40, par. 503(c)(2).

■ It appears respondent's business was never used together with marital property to obtain new property. Thus, it retains the status of respondent's nonmarital property. If the marital estate made contributions to respondent's business, then reimbursement would be possible if the contributions were traceable by clear and convincing evidence. (Ill. Rev. Stat. 1991, ch. 40, par. 503(c)(2).) The evidence presented in the trial court did not establish that marital property was contributed to the nonmarital mattress business. In making this determination, we are well aware that sole proprietorship, noncorporate business net income might be considered income attributable to the *personal effort* of the owner and thus marital property. See Ill. Rev. Stat. 1991, ch. 40, par. 503(a)(8).

The petitioner also seeks reimbursement to the marital estate because of payments made from respondent's earned income on mortgages placed on the rural tract. Once again, these contributions must be traceable by clear and convincing evidence. (Ill. Rev. Stat. 1991, ch. 40, par. 503(c)(2).) Petitioner makes a like claim as to payments made on the marital residence indebtedness.

Our main problem with this claim relates first to the fact that nonmarital income from the Terre Haute property was used to make payments and that a sizable debt encumbering the residential property was assigned to the respondent in the dissolution judgment. We recognize that evidence presented to the trial court did not include an exact record of all bank account receipts and disbursements. In this case, that could well have been impossible, or at least impractical. We are left with testimony that rental income from the Terre Haute property was adequate (and was used) to pay the various Illinois mortgages, which were used to finance the Terre Haute purchase. This income was from respondent's nonmarital asset. It was not converted to marital property by paying debts encumbering other nonmarital property.

The evidence establishes that the $25,000 sale receipts from the Terre Haute property were used to pay the unpaid mortgage balance

of $6,000, as well as the balance owing on the trailer ($5,247) and the homesite improvements. The trailer and homesite improvements were connected to the ultimate purchase and placement of the 60- by 28-foot residence. This, then, was a use of respondent's nonmarital property to pay for expenditures which became part of other nonmarital property.

We conclude that the only evidence of marital income being contributed to respondent's nonmarital property relates to payments made on the indebtedness incurred upon the purchase of the trailer and then the purchase of the later residence. Offsetting the trailer debt was the payment of $5,247 from respondent's nonmarital proceeds from the sale of the Terre Haute property. Evidence indicated the trailer was used as a trade-in on the new house and a credit of $11,580 was given against the purchase price. We have, after the $5,247 reduction, a possible $6,333 amount that appears to be attributable to respondent's earned income, which is marital property.

In addition, from the time of the execution of the $37,000 installment note relating to the house purchase (March 21, 1989) until the August 30, 1991, mortgage, the home indebtedness was reduced to approximately $24,000. The payments evidently came from payments by respondent from his earned income. We apparently have a reduction of $13,000 from a debt encumbering respondent's nonmarital property paid from marital estate funds. Evidence of the valuation of the residence would indicate the reduction in debt enhanced the value of the nonmarital property.

We conclude the respondent's nonmarital rural property was enhanced in value by contribution of $19,333 from the marital property, *i.e.*, $6,333 which was evidently paid by marital income on the principal owing on the trailer debt and $13,000 which was paid by marital income on the principal of the new home mortgage. The marital estate should be reimbursed from the respondent's nonmmarital property.

On remand, the trial court should allocate this reimbursement, considering previous evidence and previous distributions, and follow the dictates of section 503 of the Marriage Act.

### ATTORNEY FEES

■ Each party contested the trial court's order requiring respondent to pay $1,400 of petitioner's $3,035 attorney fees. Section 508 of the Marriage Act provides for fees to be paid "enabling a party lacking sufficient financial resources to obtain or retain legal representation." (Ill. Rev. Stat. 1991, ch. 40, par. 508.) Financial in-

ability exists where requiring payment of fees would strip a party of means of support or undermine financial stability. (*In re Marriage of Haas* (1991), 215 Ill. App. 3d 959, 965, 574 N.E.2d 1376, 1380.) Regardless of the portion petitioner receives from the marital estate, she will be basically destitute. The entire attorney fee award, which certainly appears reasonable, should be paid by respondent, and we so mandate.

## CHILD SUPPORT

■ Child support payments ordered by the trial court based upon the respondent's evidence of net income exceeded the guidelines set forth in section 505 of the Marriage Act. The minimum percentage guidelines are to be applied in each case, unless evidence shows reason for deviating from the guidelines after considering the relevant factors set forth in the statute. Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(2); *In re Marriage of Tatham* (1988), 173 Ill. App. 3d 1072, 1093, 527 N.E.2d 1351, 1363.

As to respondent's argument of prior child support payment obligations, we concur with the statement in *Hellige v. Hellige* (1977), 50 Ill. App. 3d 209, 215, 365 N.E.2d 220, 224, "If the defendant had reached the station in life where he could afford to maintain two families prior to the divorce, he can do the same after the decree is entered."

The trial court was aware of Jeremy's physical condition, which requires not only petitioner's presence but also expensive medical attention. Petitioner was ordered to pay 25% of all medical bills for both Jeremy and his sister. Petitioner was not employed and was attempting to complete school work in order to obtain gainful employment and pay debts. Respondent owned his own business which for years 1985 through 1990 had annual net profits ranging from $33,391 to $72,175 and averaging $56,145. The 1989 profit was $69,329; 1990 profit was $72,175. The decision to vary from the guidelines was not against the manifest weight of the evidence.

## MAINTENANCE

■ Section 504 of the Marriage Act sets forth provisions relating to maintenance. The facts in this case required, as a matter of law, that maintenance be awarded for at least 36 months. The ending of maintenance was tied to the earliest time petitioner might obtain her RN degree. At that time, Jeremy will be seven years of age and Jennifer six. Both will be in school. Considering the earning capacity of respondent as indicated by past earnings, his ability to loan funds to

Mattoon Mattress, and the tax benefits of deducting alimony and taking the children as exemptions, it is clear that maintenance of $800 per month was not unreasonable.

## CONCLUSION

This cause is affirmed in part, reversed in part, and remanded for the purpose of the trial court's allocating reimbursable marital property in the amount of $19,333 and directing respondent to pay petitioner's attorney fees. In allocating the $19,333 between petitioner and respondent, the court shall consider evidence available at the previous hearing and consider factors set forth in section 503 of the Marriage Act. A new hearing is not necessary.

Affirmed in part; reversed in part and cause remanded with directions.

McCULLOUGH, P.J., and STEIGMANN, J., concur.