NOTICE

Decision filed 10/06/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 210255-U

NO. 5-21-0255

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| JENNIFER PARKER, | ) | Hamilton County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 19-D-3 |
| | ) | |
| DAVID PARKER, | ) | Honorable |
| | ) | Evan L. Owens, |
| Respondent-Appellee. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Welch and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's failure to classify property acquired by gift as nonmarital property was against the manifest weight of the evidence.

¶ 2    The petitioner, Jennifer Parker, appeals the division of property granted to her by the circuit court of Hamilton County, following a dissolution of her marriage to the respondent, David Parker. For the following reasons, we reverse and remand.

¶ 3                                 I. BACKGROUND

¶ 4    On June 16, 1990, Jennifer and David were married. One child was born during the marriage; the child was above the age of majority by the time of the parties' dissolution of

1

the marriage. During the marriage, Jennifer was gifted unimproved real estate from her parents. A deed executed on April 17, 1996, transferred 10 acres of land to Jennifer. A second deed executed on December 28, 2001, transferred two parcels of land containing 35 acres and 5 acres. All of these parcels were deeded to Jennifer in her name only. The parties built a residence on the 10-acre parcel of land and lived there during the marriage. To build the residence, the parties took out a mortgage in both of their names. At the time of dissolution, this mortgage had an outstanding balance of $14,000. They also secured a second mortgage (home equity loan) on the property, which had an outstanding balance of $17,000 at the time of dissolution. The deeds to all of the property remained in Jennifer's name throughout the marriage.

¶ 5    On January 15, 2019, Jennifer filed a petition for dissolution of marriage. That same day, she also filed a petition for temporary relief, requesting exclusive possession of the marital residence. In that motion, Jennifer argued that she should be awarded exclusive possession of the residence because it was built on her nonmarital property that was a gift from her parents. She also alleged that she and David entered into a postnuptial agreement in which they agreed that the residence was Jennifer's nonmarital property. On June 5, 2019, an order was entered in which the parties agreed that Jennifer would have exclusive possession of the marital residence.

¶ 6    On February 19, 2020, Jennifer filed a motion for summary judgment, in which she claimed that, during the course of the marriage, (1) David had engaged in risky and fraudulent financial dealings around the end of 2011 and beginning of 2012; (2) he had lost thousands of dollars of marital money to an internet inheritance scam without Jennifer's

knowledge and attempted to hide these transactions from her; (3) as a result of these financial dealings, they had conversations about ending their marriage; and (4) they had agreed to enter into a postnuptial agreement in which he would transfer any interest he had in the marital residence to her as her sole and separate property, so she would have financial security. Attached to the motion, among other things, was the postnuptial agreement, which stated as follows:

> "THIS AGREEMENT is made by and between Jennifer Parker (hereinafter referred to as Jennifer or the Wife) residing in Hamilton County, Illinois and David Parker (hereinafter referred to as David or the Husband) residing in Hamilton County, Illinois. The parties hereby understand and agree that the property as outlined in the attached Quit-Claim Deeds shall be considered the Wife's separate, non-marital property as it was all acquired through gift or inheritance."

The quitclaim deeds attached to the postnuptial agreement were the two aforementioned deeds for the gifted land that Jennifer had received from her parents. There was no mention of the marital residence in the agreement.

¶ 7 On March 19, 2020, David filed a response to the motion for summary judgment. In his response, he contended that the postnuptial agreement was not a valid agreement because there was no meeting of the minds, as Jennifer only gave him the second page of the document to sign; he did not see the entire document until he was represented by counsel; there was no consideration given in exchange for his promise to transfer his interest in the marital residence; and he was not represented by counsel at the time that he signed the agreement.

3

¶ 8     On June 17, 2020, the trial court entered an order by docket entry, finding that there existed a genuine issue of material fact that precluded entry of summary judgment. The court also set the trial date to determine the allocation of the marital property.

¶ 9     At trial, the following testimony, in pertinent parts, was presented. David testified that, during the marriage, he wired approximately $30,000 to a third party overseas in what ended up being a fraudulent inheritance scheme. In March 2012, after finding out that David was the victim of a financial scam, Jennifer wrote David a letter, which detailed changes that needed to be made with regard to their finances. Although David told her that he was willing to do anything to salvage their marriage, he testified that he did not realize that there was going to be a postnuptial agreement. However, he acknowledged that he signed the postnuptial agreement in front of a notary at U.S. Bank. Jennifer told him that she needed him to sign some documents, but did not say that it was a postnuptial agreement, and did not give him the first page of the agreement. Because he trusted her, he signed the document without asking any questions and without reading the document. He acknowledged that Jennifer was concerned with being financially secure.

¶ 10     David also testified that Jennifer received real estate from her mother and father through two quitclaim deeds. Jennifer and David built the marital residence in 1996, on the 10-acre parcel of land, and they lived in that home until their separation. Since 2001, he has owned his own business, Parker Automotive. From 2001 until their separation, Jennifer paid all of the household bills, and he gave her money to help pay the bills when he had it. He agreed that Jennifer should be awarded the marital residence and requested that he be awarded his business. He made contributions to the marital residence by making some

4

mortgage payments, completing a substantial amount of work on the house, and maintaining the property.

¶ 11   Jennifer testified that, during the marriage, she made the majority of the payments on the marital residence. Her parents gifted her several tracts of land, one of which was 10 acres, and the other was 35 acres with an additional 5 acres. The land was titled in her name only. On the 10-acre tract, she and David built the marital residence.

¶ 12   Around 2012, Jennifer noticed that David was acting secretive, and she became suspicious because he had a history of making poor financial decisions. She eventually discovered that he was sending money to a third party in an inheritance scam, and he had taken $10,000 from a home equity line of credit that was in both of their names. After learning about the financial scam, Jennifer separated their bank accounts and began paying the home expenses from her separate account. She was afraid that they were going to lose their home and was considering divorce, so she wrote him a letter in March 2012, which detailed financial changes that she felt were necessary for her financial security. In the letter, she explained that she wanted the residence to be her sole property.

¶ 13   Jennifer further explained that she had legal counsel draft a postnuptial agreement which stated that David was waiving any interest he had in the tracts of land which her parents had gifted to her. She previously had discussions with him about having a postnuptial agreement to protect herself financially and that her remaining in the marriage was contingent on the postnuptial agreement. They took the agreement to U.S. Bank, and they both signed it in front of a notary. Jennifer said she gave David the entire document, and, although she did not specifically tell him that it was a postnuptial agreement, she told

5

him that it was something they had previously discussed. She explained that she had several discussions with him about making sure the marital residence was protected, especially since he took money out of their home equity line of credit. At the conclusion of all the testimony, the trial court requested written closing arguments.

¶ 14    Jennifer, in her closing argument, stated that the two deeds she received from her parents were gifts. The 35-acre, 10-acre, and 5-acre tracts of land remained in her name alone after they were gifted to her by her parents. As such, the land should be considered Jennifer's nonmarital property. Jennifer acknowledged that the home (located on the 10-acre parcel) was built during the marriage which would make the residence a marital asset. However, there were multiple issues with the marital asset because the home was located on nonmarital property, a postnuptial agreement had been signed by the parties, and Jennifer had made the vast majority of payments for the house from a separate account. Jennifer argued that David did not present a clear valuation of the marital residence in relation to the property it was built on and did not value any reimbursable contributions that he arguably made to the nonmarital estate. Because of this, Jennifer claimed there should be no contribution from Jennifer's nonmarital estate to the marital estate.

¶ 15    David, in his closing argument, argued that the parties agreed on the appraised value of $180,000 for the marital home. David claimed that the postnuptial agreement was not valid because it lacked consideration and it lacked mutuality, or a meeting of the minds. He further argued that the postnuptial agreement was irrelevant. David claimed that the court was required to consider the relevant economic circumstances of each spouse when considering the award of property. Annually, David earned $36,000 and Jennifer earned

$98,000. He argued that he should receive a larger share of the marital estate even if the court classified the marital residence as nonmarital property based on their relative economic circumstances.

¶ 16    On June 4, 2021, the trial court entered a judgment of dissolution of marriage, in which the court, *inter alia*, concluded that the postnuptial agreement was invalid. In making this decision, the court noted that, when examining a contract, the parties' intent must be found within the four corners of the document, but that Jennifer was requesting that the court look beyond the document to extrinsic evidence of the parties' financial difficulties at the time of the agreement's execution. The court noted Jennifer's argument that the intent and consideration for the postnuptial agreement was for her to remain in the marriage for an indefinite period of time in exchange for David forgoing any claim on the value of the marital residence because of his poor financial decisions. The court, however, found that this language regarding intent and consideration was not included in the postnuptial agreement. The court further noted that another interpretation of the extrinsic evidence might be an acknowledgement that the real property identified in the deeds was a gift to Jennifer to avoid any creditor's claims.

¶ 17    Nevertheless, the trial court found that there was inadequate consideration given to David to forgo his interest in the marital residence, there was no meeting of the minds as to what the agreement actually meant, and there was no length of time set out that the marriage would continue. The court found that, looking at the totality of the evidence presented, the intent of the parties in entering into the postnuptial agreement was not clear from the four corners of the document or by looking at the extrinsic evidence presented by

7

Jennifer and that the agreement was ambiguous at best. Because Jennifer was responsible for drafting the agreement, any ambiguity was construed against her.

¶ 18    The court found the marital home was built on real estate that was gifted to Jennifer from her parents. The court found that the parties agreed that the appraised value of the parcel with the marital home was $180,000. The equity in the home was found to be $149,000 when the court considered the two mortgages with outstanding balances of $14,000 and $17,000. The judgment did not list any nonmarital property. The court then awarded the residence to Jennifer along with some personal property and a one-half interest in the investment accounts. David was awarded his business, some personal property, and the other one-half interest in the investment accounts.

¶ 19    On June 28, 2021, Jennifer filed a motion to reconsider, arguing, in pertinent part, that the evidence presented demonstrated that David knew that he was signing a postnuptial agreement and that the continuation of the marriage was sufficient consideration for the postnuptial agreement to be valid. Jennifer also contended that the language of the postnuptial agreement was clear that the tracts of land should be considered her separate, nonmarital property. She argued that because the parties complied with the terms of the agreement by separating their finances, and by her exclusively paying for the marital residence, this was evidence that the postnuptial agreement was valid.

¶ 20    On July 23, 2021, the trial court entered an order, finding that it would be unconscionable to exclude the marital residence from the marital estate where both parties had contributed to building and maintaining the home. Thus, the court denied Jennifer's motion to reconsider. Jennifer appeals.

¶ 21                                  II. ANALYSIS

¶ 22    On appeal, Jennifer argues that the trial court erred in classifying the marital home as marital property. Before a trial court may dispose of property upon a dissolution of marriage, it must classify the property as either marital or nonmarital property, and the court's classification will not be disturbed unless it is contrary to the manifest weight of the evidence. *In re Marriage of Hagshenas*, 234 Ill. App. 3d 178, 186 (1992).

¶ 23    Under section 503 of the Illinois Marriage and Dissolution of Marriage Act (Act) "marital property" means all property acquired by either spouse subsequent to the marriage, and lists several "non-marital property" exceptions. 750 ILCS 5/503(a) (West 2020). The "non-marital property" exceptions considered in this case are:

> "(1) property acquired by gift, legacy or descent or property acquired in exchange for such property"; and

> "(4) property excluded by valid agreement of the parties, including a premarital agreement or a postnuptial agreement." 750 ILCS 5/503(a) (West 2020).

¶ 24    There is a rebuttable presumption that property acquired after the marriage but before the entry of judgment of dissolution of marriage is marital property, regardless of how title was held. 750 ILCS 5/503(b)(1) (West 2020). "The presumption of marital property is overcome by showing through clear and convincing evidence that the property was acquired by a method listed in subsection (a) of this Section or was done for estate or tax planning purposes or for other reasons that establish that a transfer between spouses was not intended to be a gift." 750 ILCS 5/503(b)(1) (West 2020).

¶ 25    Both David and Jennifer testified that Jennifer's parents transferred land through two quitclaim deeds to Jennifer only. David concedes that the land was gifted to Jennifer during their marriage. The presumption that the land was marital property because it was acquired after the marriage, was overcome by the parties agreeing that the land was a gift to Jennifer. Therefore, the parcels of land gifted to Jennifer through quitclaim deeds should have been classified as nonmarital property by the trial court.

¶ 26    Jennifer additionally argues that the court erred in determining the postnuptial agreement was invalid. She acknowledges, however, that this issue is moot since the contested property was her nonmarital property regardless of whether the postnuptial agreement was valid. The document referred to as the postnuptial agreement classified the land identified in the quitclaim deeds that Jennifer received from her parents as nonmarital property. There was no reference to a home in the postnuptial agreement. "[A] quitclaim deed will convey whatever title or interest the grantor may have in the land at the time it is given *and only such title and interest*." (Emphasis in original and internal quotation marks omitted.) *In re Marriage of Didier*, 318 Ill. App. 3d 253, 261 (2000). Jennifer's parents could not have transferred an interest in the marital residence to Jennifer because the house was constructed after the quitclaim deeds were gifted. And regardless of the validity of the postnuptial agreement, the document was silent as to the classification of the residence and does not, therefore, reflect whether the parties had agreed that the marital home was nonmarital property.

¶ 27    Jennifer established that the land she received through the quitclaim deeds was nonmarital property because it was acquired by gift. David argues that after the property

10

was gifted to Jennifer, the gift became potentially subject to division as a marital asset unless Jennifer maintained it as her separate property. He testified that he made contributions to the marital residence by making some mortgage payments, completing a substantial amount of work on the house, and maintaining the property. We have already determined that the tracts of land gifted to Jennifer were her nonmarital property. The trial court did not address the commingling of the marital residence and the nonmarital property.

¶ 28 The essence of David's argument is that he is entitled to some contribution from the nonmarital estate because of work he did to maintain the property. After classifying the property as marital or nonmarital, the court should determine whether the estate receiving the contribution owes reimbursement to the other estate. *In re Marriage of Patrick*, 233 Ill. App. 3d 561, 569 (1992). Section 503(c) addresses how the trial court shall treat commingled marital and nonmarital property. 750 ILCS 5/503(c) (West 2020). According to section 503(c)(2)(A) of the Act:

> "When one estate of property makes a contribution to another estate of property, the contributing estate shall be reimbursed from the estate receiving the contribution notwithstanding any transmutation. No such reimbursement shall be made with respect to a contribution that is not traceable by clear and convincing evidence or that was a gift. The court may provide for reimbursement out of the marital property to be divided or by imposing a lien against the non-marital property that received the contribution." 750 ILCS 5/503(c)(2)(A) (West 2020).

¶ 29 Even though the court found that the marital home was built on property that was gifted to Jennifer from her parents, the trial court did not classify the nonmarital and marital property in the judgment of dissolution. The trial court, therefore, did not address how to treat the commingled marital and nonmarital property to determine whether the

11

contributing estate should receive reimbursement. Furthermore, the trial court found that the appraised value of "the parcel with the home" was $180,000, without defining the value and description of "the parcel" in the judgment. The trial court's finding is unclear where Jennifer was gifted a parcel with 35-acres and 5-acres of land, which was not classified as nonmarital property, as well as the 10-acre parcel where the marital residence was constructed. Because the trial court did not address the gifted nonmarital property and how the home should be valued *vis-à-vis* the 10 acres that it was constructed on, the court's classification of property was against the manifest weight of the evidence.

¶ 30                                  III. CONCLUSION

¶ 31    For the reasons stated herein, we reverse the trial court's disposition of the parties' valuation of the property and remand for further proceedings.


¶ 32    Reversed and remanded.